UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA MARINO and
ALEXANDRIA SEBESTA, individually
and on behalf of a class of
similarly situated persons and entities,

      Plaintiffs,

v.

COMERICA BANK,

      Defendant.

Case No. 2:25-cv-10504

Hon.

CLASS ACTION

DEMAND FOR JURY TRIAL

---

Gregory D. Hanley (P51204)
Jamie K. Warrow (P61521)
Edward F. Kickham III (P70332)
Kickham Hanley PLLC
32121 Woodward Avenue, Suite 300
Royal Oak, MI 48073
(248) 544-1500
Counsel for Plaintiffs and the Class

Kevin Kijewski (P74153)
KDK Law
950 East Maple Road, Suite 204
Birmingham, MI  48009
(248) 971-01476
Co-Counsel for Plaintiffs and the Class

---

## PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Jessica Marino and Alexandria Sebesta ("Plaintiffs"), by their attorneys,

Kickham Hanley PLLC and KDK Law, individually and on behalf of a class of similarly

situated class members, state the following for their Class Action Complaint against

Defendant Comerica Bank ("Comerica").

## INTRODUCTION

1.     This is a nationwide class action brought under Michigan law against Comerica challenging Comerica's retention of earnings Comerica has realized on funds owned by Plaintiff and the Class but held as "special deposits" by Comerica.

2.     Plaintiff and the Class are recipients of electronic benefit payments (the "Benefits") from the United States Government.  The Benefits at issue include Social Security, Supplemental Security Income and Veterans Benefits.

3.     Federal law requires that all Benefit payments be made through electronic transfers.  At relevant times, the United States Government designated Comerica as its financial agent for the "Direct Express" program.[1]  The Direct Express card is a prepaid debit card offered by Comerica to federal benefit recipients (the "Benefit Recipients") who receive their benefits electronically.

4.     Benefit payments made to holders of the Direct Express Card are deposited into accounts maintained for the Benefit Recipients by Comerica.

5.     Comerica has a contractual relationship with Benefit Recipients which is reflected in a written "Terms of Use."  Benefit Recipients are required to agree to the Terms of Use in order to use their Direct Express Card and access their funds.

---

[1]     Effective January 3, 2025, the Bank of New York Mellon replaced Comerica as the U.S. Government's financial agent for the Direct Express program.  At the time of the filing of this Complaint, however, Comerica continues to act as the Government financial agent for the program during a transition period.

6.     Comerica receives billions of dollars of Benefit Payments each year (the "Funds"). While the Funds are at Comerica and before they are withdrawn by Benefit Recipients, Comerica earns interest and other investment income on the Funds (the "Earnings"). On information and belief, these Earnings exceed $100 million per year.

7.     Comerica promised in the Terms of Use that it would comply with applicable Michigan law in the performance of its responsibilities. Under Michigan law, interest or other earnings on a fund of money are the property of the owner of the fund. Under Michigan law, because the Benefit Payments are "special deposits," they remain the property of the Benefit Recipients at all times while the Funds are held by Comerica.

8.     By seizing the Earnings, Comerica (1) has breached its contract with the Benefit Recipients, (2) has converted the property of the Benefit Recipients to its own use in violation of Michigan common and statutory law, and/or (3) has breached its fiduciary duty. Comerica's breach of contract, conversion and/or breach of fiduciary duty have proximately caused Plaintiffs and the Class to suffer injury and damage, for which Comerica should be held responsible. In the alternative, Comerica has been unjustly enriched by its seizure of the Earnings and should be required to disgorge those Earnings to Plaintiffs and the Class.

## JURISDICTION AND VENUE

9.      Plaintiffs are Direct Express account holders and Representative Payees[2] for Benefit Recipients who had Earnings on their Funds unlawfully seized by Comerica and who seek to act as class representatives for a nationwide class of all similarly situated persons and entities (hereafter the "Class").

10.      The Plaintiffs are citizens of the State of Michigan residing in the Eastern District of Michigan.

11.      Defendant Comerica is a bank that is part of the Federal Reserve System and which is chartered by the State of Texas.  Comerica is regularly present in the Eastern District of Michigan.  For federal jurisdictional purposes, Comerica is a citizen of the State of Texas because it is chartered there and its principal place of business is in Dallas, Texas.

12.      This Court has original subject matter jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. Sec. 1332(d)(2), because the aggregated claims of Plaintiffs and the Class exceed $5 million, exclusive of interest and costs, and at least one class member is a citizen of a State different from Comerica.

---

[2]      Social Security's Representative Payment Program provides benefit payment management for Benefit Recipients who are incapable of managing their Social Security or Supplemental Security Income (SSI) payments. The Government appoints suitable Representative Payees who manage the payments on behalf of the beneficiaries.  Throughout this Complaint, Representative Payees are included in the definition of Benefit Recipient.

13.     Venue is proper pursuant to 28 U.S.C. Sec. 1391(b)(1) and (2) because Comerica "resides" in this District and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial party of property that is the subject of the litigation is located in this District.

## GENERAL ALLEGATIONS

### A.     THE DIRECT EXPRESS PROGRAM

14.     With limited exceptions, the U.S. Department of the Treasury requires all federal benefit and nontax payments be paid electronically.  *See* 31 U.S.C. Sec. 3332. Anyone applying for benefits must choose an electronic payment method at the time they apply for the benefit.  Benefit recipients can choose to receive their payments by direct deposit to the bank or credit union account of their choice or to a Direct Express Debit MasterCard card account.

15.     The Direct Express Debit MasterCard (hereinafter the "Direct Express Card") is a prepaid debit card offered to federal benefit recipients who receive their benefits electronically. The Direct Express Card offers the convenience and security of using electronic transactions for Benefit Recipients to spend and access their money rather than using cash for purchases. Benefit Recipients do not need to have a bank account to sign up for the Direct Express Card. There is no credit check or minimum balance requirement.

16.     When a person signs up to receive his or her federal benefits on the Direct Express Card, they receive their payments every month without having to worry about

cashing their checks or having them lost or stolen. Instead of receiving a check, the Benefit Recipients' money is automatically deposited to their Direct Express Card account on payment day. Cardholders can use their card to make purchases at stores that accept Debit MasterCard, withdraw cash from Automated Teller Machines (ATMs), and get cash back when they make purchases. Cardholders can also use their debit cards online to make payments and to also buy money orders at the U.S. Post Office.

17.     More than 3.8 million individuals receive their Benefit Payments electronically to a Direct Express Card. The Direct Express program is an essential instrument for the U.S. Treasury Department to comply with Federal law requiring electronic federal benefits payments. For many cardholders, their federal benefit is the sole source of income and is essential for basic living needs. Many cardholders do not even have bank accounts.

18.     Direct Express accounts are not issued or held by the Treasury Department. The cards and accounts are issued and maintained by a financial institution, as required by statute. At all relevant times, Comerica has been the U.S. Department of the Treasury's single financial agent and is the issuer of the Direct Express Cards for Benefit Recipients nationwide. Benefit payments made to holders of the Direct Express Card are deposited into accounts maintained for the Benefit Recipients by Comerica.

19.     Comerica's relationship with Benefit Recipients who use the Direct Express Card is governed by a written Terms of Use, which is attached hereto as Exhibit A and is incorporated herein by reference.   The Terms of Use have a number of provisions relevant to Plaintiffs' claims in this case.

20.     First, the Terms of Use make clear that Benefit Recipients are the "owners" of the funds deposited at Comerica pursuant to the Direct Express program.

> **Card Account.**
> The account held at Comerica Bank to which your Benefits are electronically transmitted by the Agency and which you access by using your Card.  **You are the owner of the funds in the Card Account**. The funds are FDIC insured to the maximum amount permitted by law." [Exhibit A hereto at p. 1 (emphasis added)].

21.     Second, the Terms of Use further provide that, regardless of where Benefits Recipients reside, Michigan law governs the Terms of Use:

> **Governing Law.**
>
> **The funds in your Card Account are deemed held in the State of Michigan**. Unless a federal law or regulation applies to a specific section of these Terms or use of the Card**, these Terms will be governed by and interpreted in accordance with the laws of the State of Michigan**. Depending on where you live, you may have additional rights under certain state laws that apply to us and your Card.  **We will comply with applicable federal and state law**." [Exhibit A hereto at p. 6, § XIV. Legal & General Terms (emphasis added)].

22.     There are  no  federal laws  or  regulations which  govern  Comerica's payment of interest on demand deposits, generally, or Direct Express program deposits, specifically.  Accordingly, the relationship between Plaintiffs and the Class, on the one

hand, and Comerica, on the other hand, is "governed by and interpreted in accordance with the laws of the State of Michigan." *Id.*

**B.** **COMERICA'S "FLOAT" EARNINGS ON DEPOSITS INTO THE ACCOUNTS OF PLAINTIFFS AND THE CLASS.**

23.     In order to recover the costs it purportedly incurs to administer the Direct Express program, Comerica charges fees (the "Fees") to the Direct Express cardholders, which are debited from their account balances. These Fees include fees for certain kinds of ATM cash withdrawals, fees for purchases at merchant locations outside of the U.S. and fees for monthly paper statements.

24.     The Fees Comerica charges to cardholders have been sufficient to cover all or virtually all of the costs Comerica incurred in administering the Direct Express program. For example, in the year ending December 31, 2023, Comerica's card fee income related to the Direct Express program was $138 million and its outside processing expenses related to the Direct Express program were $139 million.

25.     Separate and apart from its Fee income, Comerica earns money on Funds it maintains that are owned by Benefit Recipients. At all relevant times, Comerica maintained an average of $3 billion of Funds on deposit at Comerica. Comerica has invested and continues to invest those Funds, and has earned and continues to earn interest and other investment returns, which it retains for itself (the "Earnings"). On information and belief, Comerica realizes and retains over $100 million in Earnings annually.

C.     PLAINTIFFS AND THE CLASS ARE THE OWNERS OF THE FUNDS IN
       THEIR    "SPECIAL   DEPOSIT"   ACCOUNTS—INCLUDING   THE
       EARNINGS.

26.     Here is Comerica's problem: the Earnings belong to the Benefit

Recipients because of the unique relationship between Comerica and the Benefit

Recipients that is dictated by (a) the Terms of Use, and/or (b) Michigan law.

27.     The accounts maintained by Comerica for the Benefit Recipients are not

"ordinary" or "general" deposit accounts.  In *Riverview Coop, Inc v First Nat Bank & Trust*

*Co of Mich*, 417 Mich 307, 317-318; 337 NW2d 225 (1983), the Court stated:

> When funds are deposited in an ordinary checking account, they become
> the bank's funds for such use as the bank deems appropriate, subject only
> to the bank's duty to repay to the creditor-depositor an amount equal to
> the sums deposited upon the call of the depositor or his authorized
> representative. **The money, once deposited, becomes the bank's**
> **money**, the depositor having only an entitlement to recoupment of an
> equivalent sum upon demand, having loaned the bank the amount
> deposited. Such funds become a fungible part of the bank's general assets
> and retain no separate identity.  [emphasis added]

28.     Here, however, Comerica has declared in its Terms of Use that "**you are**

**the owner of the funds in the Card Account**."  [Emphasis added].  These types of

accounts therefore are not "ordinary" or "general" deposit accounts.  The Funds

Comerica is using to generate profits are the property of the Benefit Recipients.  There

is no debtor-creditor relationship whereby ownership of the funds gets transferred to

Comerica as a debtor.  Instead, Comerica is a mere custodian of the Funds.

29.     Other aspects of the Direct Express Program confirm that the Direct

Express accounts are special deposit accounts.  First, Comerica has unique routing

number(s) designated specifically to Debit Cards under the program, and also created unique BIN(s) [Bank Identification Numbers] designed specifically for the program.

30.     Routing numbers are nine-digit numbers that identify the bank or credit union in a financial transaction.  BINs are the first four to six numbers on a payment card. This set of numbers identifies the financial institution that issues the card. As such, it matches transactions to the issuer of the card being used.  Ordinary demand deposit accounts do not have unique routing numbers, nor do they have unique BIN(s). The unique routing number and BIN designed specifically for the Direct Express program confirms that the Funds representing Benefit Payments are segregated from Comerica's general deposits and held for the sole benefit of the Benefit Recipients.

31.     The Direct Express deposits are not mingled with the money of other depositors in a general fund chargeable with the payment of general deposits.

32.     Further, the Terms of Use do not authorize Comerica to set off a cardholder's Direct Express Card for the obligations of a cardholder unless the obligations are directly related to the cardholder's Direct Express Card.  The right of set-off is unique to general deposits which become the property of the bank.  "It cannot properly be said that the bank has a lien on its own funds. Rather, the bank is allowed to set off its debt to the depositor (represented by the balance in the deposit account) against debts owed to it from the same depositor." 1 Graham, Banking Law, Lien & Setoff, § 11.03, pp 11-9 and 11-10.  By prohibiting Comerica from the rights of set-off

applicable to general deposit accounts, the Terms of Use make clear that the Benefit

Payments are "special deposits," as defined below.

33.    The Funds in the Direct Express accounts of Plaintiffs and the Class

constitute "special deposits" under Michigan law.  In *Union Guardian Trust Co. v.*

*Emery,* 292 Mich. 394, 414, 290 N.W. 841 (1940), the Court described the distinction

between general and special deposits as follows:

> Deposits in banks are ordinarily divided into general and special deposits. A general deposit creates the relation of debtor and creditor between the bank and the depositor, and may be repaid on demand, in whole or in part, in current money. It consists of money which is mingled with the money of other depositors in a general fund chargeable with the payment of general deposits, possesses no trust quality, and loses its special identity in its general commingling with the funds of the bank. **A special deposit of money is a deposit for safekeeping. It contemplates the return of the identical money deposited. The relation of bailor and bailee exists between the depositor and the bank. The bank has no right to handle or use the money constituting a special deposit. No relation of debtor and creditor exists between the depositor and the bank**.  In case of a general deposit, there is a depositor, not a bailor; a debtor, not a bailee; a creditor, not an owner. **The title of the money constituting a special deposit does not pass to the bank**.. [emphasis added].

**D**.    **PLAINTIFFS AND THE CLASS OWN THE EARNINGS ON THE FUNDS IN THEIR ACCOUNTS.**

34.    The Comerica Terms of Use contractually obligate Comerica to comply

with Michigan law.   The Comerica Terms of Use do not explicitly address the

disposition or ownership of the Earnings.  The Terms of Use do not provide that the

Earnings are the property of Comerica.  Accordingly, given that the governing contract

is silent on the issue of the disposition or ownership of the Earnings, the ownership of

the Earnings is governed by Michigan common law, which is incorporated into the Terms of Use and which binds Comerica.

35.     "In general, interest is merely an incident of the principal fund, making it the property of the party owning the principal fund."  *Grand Rapids Pub. Schs. v. City of Grand Rapids,* 146 Mich. App. 652, 381 N.W.2d 783, 786 (1986). Thus, the common law rule that "interest follows principal" applies in Michigan. *Star-Batt, Inc. v. City of Rochester Hills,* 251 Mich. App. 502, 650 N.W.2d 422, 426 (2002) ("Interest earned on a principal fund is the property of the party owning the fund.").  This common law rule applies when a party acts as a custodian of private funds under state or local law.  *Id.* at 426-27.

36.     Where the governing authority (e.g., a statute or private contract) provides that one party is the owner of certain principal funds, Michigan law dictates that the interest or other earnings on those funds also is the property of the owner.  *See, e.g., Butler v. Michigan State Disbursement Unit,* 275 Mich. App. 309, 738 N.W.2d 269 (2007) (holding that, where a statute governing the state's disbursement of child support payments provided that money a state agency "receives as a support payment is the money of the recipient of support," interest on the funds was the property of the child support recipient).

37.     The Benefit Recipients are the owners of the Funds.  Michigan common law thus imposed a duty on Comerica, incorporated into the Terms of Use, to remit the Earnings to the Benefit Recipients.

E.     **Comerica Has Systematically Converted The Earnings Of Plaintiff and the Class**

38.     Generally, a bank can't convert the funds in a demand deposit account because the bank is the owner of the funds.  This is because there is a debtor-creditor relationship between a bank and its depositors.  Therefore, the bank cannot convert its own funds.  That is also the reason a bank has no common law duty to pay interest on those types of deposits in the absence of an agreement with the depositor, because "interest follows principal" and the bank "owns" the principal.

39.     But here, it is different.  The Terms of Use explicitly provide that, once the funds are received by Comerica, the Benefit Recipient is the "owner" of the funds.  Therefore, the common law "interest follows principal" applies and requires Comerica to disgorge any gains it earned from its use of the Funds.

40.     Comerica's seizure of the Earnings constitutes conversion of those monies.  In *Lawsuit Fin, LLC v Curry,* 261 Mich App 579, 591; 683 NW2d 233 (2004), the Michigan Court of Appeals reasoned, "[t]o support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Fin,* 261 Mich App at 591 (internal quotations and citations omitted).  Here, Comerica received the Funds without the owners' consent to the creation of a debtor-creditor relationship.  This is because the Terms of Use provide that the Benefit Recipients are the "owners" of the funds.  Also,

Comerica has the "obligation to return the specific money entrusted to" its care, because it must honor any transaction the recipient initiates with the Direct Express card.

41.    The monetary amount of Comerica's Earnings far exceeds the administrative cost of determining the amount of Earnings owed to each Benefit Recipient and crediting those Earnings to the Direct Express account of each Benefit Recipient.  Moreover, because Comerica knows (1) the amount of Earnings during all relevant time periods, (2) the amount of Funds deposited on behalf of each Benefit Recipient during all relevant times, and (3) the average amount of Funds maintained by Comerica on behalf of each Benefit Recipient during all relevant times, the amount of Earnings owed to each Benefit Recipient for all relevant times can be readily-calculated.

## CLASS ALLEGATIONS

42.    Plaintiffs bring this action as a class action, pursuant to F. R. Civ. P. 23, individually and on behalf of a proposed class (the "Class") consisting of all persons in the United States who maintained Direct Express accounts with Comerica at any time within the six years preceding the filing of this action or during the pendency of this action (the "Class Period").

43.    The members of the Class are so numerous that joinder of all members is impracticable. Indeed, while the exact number of Class members is not yet known, the number of Class members exceeds 3 million.

44.     Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs are members of the Class they seek to represent, and Plaintiffs were injured by the same wrongful conduct that injured the other members of the Class.

45.     Comerica has acted wrongfully in the same basic manner as to the entire class.

46.     There are questions of law and fact common to all Class Members that predominate over any individualized questions and that will be proved using the same evidence for each member. These predominant common questions of law and fact necessitate a class action proceeding in order to generate common answers, drive the resolution of the litigation, and include by way of example and not limitation:

a.     Whether Michigan law governs the ownership of the Funds and the resulting Earnings;

b.     Whether the accounts Comerica maintains for each Benefit Recipient are "special" or "general" deposit accounts;

c.     Whether the Funds are the property of Comerica or the Benefit Recipients:

d.     Whether Comerica owes a fiduciary duty to the Benefit Recipients with respect to the Funds;

e.     Whether Comerica's actions in seizing the Earnings constitutes a breach of contract and/or fiduciary duty; and

f.     Whether Comerica's actions in seizing the Earnings constitutes

conversion under the Michigan common law or Michigan statutory law (MCL 600.2919a).

47.    Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have no interests antagonistic to those of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent and experienced counsel to prosecute this action.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The prosecution of separate actions would create a risk of inconsistent or varying adjudications.  Furthermore, the prosecution of separate actions would substantially impair and impede the ability of individual class members to protect their interests.  In addition, since individual refunds may be relatively small for most members of the class, the burden and expense of prosecuting litigation of this nature makes it unlikely that members of the class would prosecute individual actions.  Plaintiffs anticipate no difficulty in the management of this action as a class action.  As described in Paragraph 37 above, a mechanism exists to efficiently and accurately determine the amount of damages owed to each Class Member.

## COUNT I
## BREACH OF CONTRACT

49.    Plaintiffs incorporate each of their preceding allegations as if fully set forth herein.

50.     The Terms of Use require Comerica to comply with Michigan law.

51.     Michigan law dictates that "interest follows principal" and therefore the Earnings are the property of the Benefit Recipients.

52.     Comerica has breached the Terms of Use by failing to comply with Michigan law in diverting the Earnings to its own use and not paying the Earnings to the Benefit Recipients.

53.     Plaintiff and the Class have been injured and have suffered damages as a result of Comerica's breach of contract.

## COUNT II
## COMMON LAW CONVERSION
### (Alternative to Count I)

54.     Plaintiffs incorporate each of their preceding allegations of Paragraphs 1 through 48, inclusive, as if fully set forth herein.

55.     Comerica is in wrongful possession of the Earnings.

56.     The Earnings are the property of Plaintiffs and the Class

57.     Comerica has wrongfully exercised dominion and control over the Float Earnings in violation of the rights of Plaintiffs and the Class.

58.     The Terms of Use do not address the ownership of the Earnings. Comerica's common law duty to remit the Earnings to Plaintiff and the Class is separate and distinct from the contractual obligations Comerica owes under the Terms of Use. A relationship exists between Comerica and Plaintiffs and the Class which gives rise to a legal duty without the need to enforce any contract promise itself.

59.     Comerica's conduct constitutes common law conversion under Michigan law.

60.     Comerica has acted knowingly and without regard to the rights of Plaintiffs and the Class.

61.     As a direct and proximate result of the conduct of Comerica, Plaintiff and the Class have suffered injury and damages.

## COUNT III
## STATUTORY CONVERSION
### (Alternative to Count I)

62.     Plaintiffs incorporate each of their allegations of paragraphs 1 through 48 inclusive, as if fully set forth herein.

63.     Comerica is in wrongful possession of the Earnings.

64.     The Earnings are the property of Plaintiffs and the Class

65.     Comerica has wrongfully exercised dominion and control over the Earnings in violation of the rights of Plaintiffs and the Class.

66.     The Terms of Use do not address the ownership of the Earnings. Comerica's common law duty to remit the Earnings to Plaintiff and the Class is separate and distinct from the contractual obligations Comerica owes under the Terms of Use. A relationship exists between Comerica and Plaintiffs and the Class which gives rise to a legal duty without the need to enforce any contract promise itself

67.     Comerica's conduct constitutes statutory conversion under Michigan law.

68.    Comerica has acted knowingly and without regard to the rights of Plaintiffs and the Class.

69.    As a direct and proximate result of the conduct of Comerica, Plaintiff and the Class have suffered injury and damages.

70.    MCL 600.2919a provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

> * * *

> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise. [MCL 600.2919a(1)(a) and (2).]

71.    Statutory conversion consists of the elements of common-law conversion with the additional requirement that "a plaintiff seeking treble damages pursuant to § 2919a(1)(a) must 'present[ ] evidence that the conversion was to defendant's "own use" as required by MCL 600.2919a(1)(a).'" *Aroma Wines & Equip v. Columbian Dist. Servs., Inc.*, 497 Mich 337, 356, 871 N.W.2d 136 (2015).  In *Aroma Wines*, the Court referred to statutory conversion as a "subset of common-law conversion" in which the conversion must specifically be "to the other person's 'own use.'" *Id.* at 354-355.

72.    Comerica has converted the Earnings to its own use, as required by MCL 600.2919a(1)(a).

## COUNT IV
## BREACH OF FIDUCIARY DUTY

73.     Plaintiffs incorporate each of their allegations of paragraphs 1 through 48 inclusive, as if fully set forth herein.

74.     When a financial institution accepts a special deposit, the acceptance of the funds creates a fiduciary duty owed to the owner of the funds.  *See, e.g., Masi v. Ford City Bank,* 779 F.2d 397 (7th Cir. 1985).

75.     Because the Funds constitute special deposits, Comerica had a fiduciary duty to preserve the Earnings on the Funds for the benefit of Plaintiffs and the Class, and not divert the Earnings to its own use.

76.     By seizing the Earnings, Comerica breached its fiduciary duty to Plaintiff and the Class.

77.     Comerica has acted knowingly and without regard to the rights of Plaintiffs and the Class.

78.     As a direct and proximate result of Comerica's breach of fiduciary duty, Plaintiff and the Class have suffered injury and damages.

## PRAYER FOR RELIEF

Plaintiffs request that the Court grant the following relief:

A.     Certify this action to be a proper class action under Fed. R. Civ. P. 23, with Plaintiffs certified as Class Representatives and Kickham Hanley PLLC and KDK Law designated Class Counsel;

B. Define the Class (the "Class") as consisting of all persons in the United States who maintained Direct Express accounts with Comerica at any time within the Class Period;

C. Find and declare that Comerica has breached the Terms of Use or, in the alternative, committed common law and statutory conversion, and that Comerica breached its fiduciary duties by seizing the Earnings for itself and enter a judgment in favor of Plaintiffs and the Class and against Comerica requiring Comerica to pay damages to Plaintiffs and the Class in the amount of Comerica's Earnings during the Class Period;

D. With respect to Count III, award Plaintiff and the Class treble damages, reasonable attorneys' fees and costs of litigation, as authorized by MCL 600.2919a;

E. Award Plaintiffs and the Class pre-filing, prejudgment and postjudgment interest on the amounts Comerica is required to pay to compensate the Class;

F. Award Plaintiffs and the Class the costs and expenses incurred in this action, including reasonable attorneys', accountants', and experts' fees; and

G. Grant any other appropriate relief.

## JURY DEMAND

Plaintiffs, individually and on behalf of the proposed Class, demand a jury trial on all issues so triable.

KICKHAM HANLEY PLLC

*/s/ Gregory D. Hanley*
 Gregory D. Hanley (P51204)
 Jamie Warrow (P61521)
 Edward F. Kickham III (P70332)
32121 Woodward Avenue, Suite 300
Royal Oak, Michigan 48073
(248) 544-1500
Counsel for Plaintiffs and the Class

KDK LAW

By: */s/ Kevin Kijewski*
Kevin Kijewski (P74153)
950 East Maple Road, Suite 204
Birmingham, MI  48009
(248) 971-01476
Co-Counsel for Plaintiffs and the Class


Date: February 20, 2025

# EXHIBIT A

Case 2:25-cv-10504-RJW-DRG   ECF No. 1, PageID.24   Filed 02/20/25   Page 24 of 31

# TERMS OF USE FOR YOUR DIRECT EXPRESS® DEBIT MASTERCARD® CARD

You have requested to receive certain federal government benefits by a Direct Express® Debit Mastercard® Card ("Card") issued by Comerica Bank ("us, we"), rather than receiving a check or direct deposit to your checking or savings account. You do not have to accept this benefits card. If you do not agree to accept the Card under these Terms, do not activate your Card. Instead, dispose of it by cutting it in half, notify Customer Service at the number below, and contact the agency paying your benefits to make other arrangements for receiving future benefit payments.

Keep these Terms of Use ("Terms") and the other information you received about the Card in a safe place with your other important documents, but do not keep your PIN with your Card. These Terms describe your rights and our rights regarding your Card, the use of your Card, and your Card Account.

# BY ACCEPTING THIS CARD YOU AGREE TO THESE TERMS:

## I. Definitions:

**Agency.**
> The Federal Government Agency that pays your Benefits.

**ATM.**
> Automatic Teller Machine displaying the Mastercard® logo or Mastercard® ATM Alliance Logo.

**Benefits.**
> The Federal Government payments you receive electronically from the Agency.

**Business Day.**
> Monday through Friday, excluding federal holidays.

**Card.**
> The Direct Express® Debit Mastercard® Card or its card number issued by Comerica Bank that is used to access funds in your Card Account. Access in some cases requires the use of your PIN.

**Card Account.**
> The account held at Comerica Bank to which your Benefits are electronically transmitted by the Agency and which you access by using your Card. You are the owner of the funds in the Card

Account. The funds are FDIC insured to the maximum amount permitted by law.

**PIN.**
The Personal Identification Number that you select.

**Transaction.**
A purchase, cash withdrawal, cash back, cash advance, merchant credit, Benefit deposit or other transaction made with your Card.

# II. Getting Started

## A. Activating Your Card & Selecting a PIN

1. By accepting this Card, you agree to call Customer Service at the number below to select your PIN and activate your Card. See the enclosed Direct Express® Debit Mastercard® Card brochure for more information.
2. Keep your PIN in a safe place. Do not write it on your Card or keep it near your Card.

## B. When Your Funds are Available

1. Once you have activated your Card and selected your PIN and we have received and credited funds from the Agency to the Card Account, you can begin using your Card. These funds are usually available the same Business Day we receive them.
2. If the Card Account is credited with an amount you are not entitled to receive, the amount may be deducted from the Card Account without prior notice to you. If the incorrect amount is from the Agency and you used those funds, the Agency can reclaim those funds. If we incur a loss as a result of either of these situations, we may recover those funds from you or your estate. (See Section XI, "Adjustments to Your Card Account")
3. You may not deposit funds to your Card Account. Except for credits from merchants (for returns or adjustments), only the Agency may add funds to the Card Account.

# III. Using your Card

## A. General Use of your Card

1. You can use your Card to pay for merchandise or services from any merchant that accepts Mastercard® debit cards. You can also use your Card at ATMs that display a Mastercard® logo. There are no Card fees for many of these Transactions. (See Section X, "Fees")
2. To use your Card at ATMs or to get cash back when using your Card to make purchases, you must use your PIN. For other transactions, you should select "credit" and you may be asked to sign the sales receipt. Selecting "credit" does not mean that we or the Agency are lending you money.
3. The amount of each Transaction will be deducted from your available Card Account balance along with any applicable fees (See Section X, "Fees") You should ensure that you have enough available funds in the Card Account to cover the Transaction and prior Transactions. You may not overdraw your Card Account. Funds that are subject to a Transaction Hold (see Paragraph B.1 of this Section III "Transaction Holds") or security freeze (see Paragraph 3 of Section V) are not available for other Transactions.
4. If you make a purchase through a Point of Sale ("POS") terminal, a cash refund or adjustment will not be given to you if you return the merchandise. Instead, the merchant will process a credit transaction, and we will apply the credit to your Card Account balance.
5. You can instruct us through our automated telephone Funds Transfer service, Mobile App, or

Website to transfer funds from your card account to your personal United States bank account. If we cannot authenticate or verify your personal bank account information, we may limit your initial transfer to $200.00 or not allow the transfer to proceed. There is a fee for each transfer (See Section X, "Fees"). Transfers generally take three (3) Business Days.

6. Instructions to make a telephone transfer or bill payment that are received after our cutoff hour or on a non-Business Day will be considered received as of the next Business Day. Once a transfer or payment instruction has been confirmed by us, you cannot cancel the Transaction.

## B. Transaction Holds, Preauthorized Payments, and Preauthorized Credits

1. Transaction Holds. For some Card purchases, such as car rentals and hotel accommodations, the merchant may request authorization in advance for an estimated amount. If the authorization is approved, we place a temporary hold ("Transaction Hold") on your funds for the estimated amount of the purchase so that we can ensure that sufficient funds are available when the purchase is completed. Until the Transaction finally settles, or we determine that it is unlikely to be processed, the held funds will not be available for other Transactions. Once the preauthorized Transaction finally settles, we will charge your Card for the correct amount of the final transaction and will release any excess amount. If we determine that it is not likely the preauthorized Transaction will be processed, we will release the hold and those funds will be available for your use.

2. Preauthorized Payments. You may use your Card to make regular, pre- authorized payments to merchants by giving your Card Account information to the merchant. If these payments may vary in amount, the person you are going to pay will tell you 10 days before each payment, when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set. You have the right to stop a pre-authorized payment from your Card Account if you call us at the Customer Service number below, or write to us at Direct Express®, Payment Processing Services, PO Box 245998, San Antonio, TX 78224-5998. We must receive your request at least three (3) Business Days before the payment is scheduled to be made. (Note: If we do not receive your request at least three (3) Business Days before the scheduled payment, we may attempt, at our sole discretion, to stop the payment. However, we assume no responsibility for our failure or refusal to do so, even if we accept your stop payment request). If you call, we may require you to put your request in writing to us and to provide us with a copy of your notice to the payee, revoking the payee's authority to originate debits to your Card Account, within 14 days after you call. If we do not receive the written confirmation within 14 days, we may honor subsequent debits to your Card Account. For individual payments, your request should specify the exact amount (dollars and cents) of the transfer you want to stop, the date of the transfer, and the identity of the payee. Unless you tell us that all future transfers to a specific recipient are to be stopped, we may treat your stop payment order as a request concerning the one transfer only. If you order us to stop one of these payments at least three (3) Business Days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

3. Preauthorized Credits. If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you can call us at 888-741-1115 to find out whether or not the deposit has been made. Only federal benefit payments can be applied to your Card Account.

## IV. Transactions We May Refuse to Process

A Transaction may not be processed if: (a) the amount of the Transaction exceeds your available balance, (b) the Card has been reported lost or stolen, (c) we are uncertain whether you have authorized the Transaction, or (d) there is a dispute involving your available balance. If you believe you were entitled to

Case 2:25-cv-10504-RJW-DRG   ECF No. 1, PageID.27   Filed 02/20/25   Page 27 of 31

receive Benefits in an amount different than what was credited to your Card Account, you should contact
the Agency.

## V. Problems Using Your Card

1. If you experience a problem using your Card at the self-service pump of a gas station, you may have
   to go inside to pay.
2. If you have problems using your Card and you believe you have sufficient available funds for the
   Transaction, call us at the Customer Service number below.
3. If we notice Transactions that are unusual or suspicious, we may place a temporary security "freeze"
   on your Card while we attempt to contact you.

## VI. Record of Your Transactions, Card Account Balance & Know Your Balance

You should check your Card Account balance and Transaction history on a regular basis. The information
is available to you free of charge through our Customer Service number and at our web site,
www.usdirectexpress.com. For a fee, you can also receive written statements each month.

1. Keep track of your Transactions, including Transaction Holds, so you know your Card Account
   balance.
2. When you withdraw cash or make a purchase, you can get a receipt for the Transaction. In some
   cases, the receipt will indicate your Card Account balance. You also can get information about your
   Card Account balance and a record of your Transactions by calling the Customer Service number
   below or by visiting www.usdirectexpress.com.
   [Note: Balance information may not include Transactions or fees that are still in process and have
   not yet settled. The balance also may include payments subject to a hold (See Section III, Paragraph
   B "Transaction Holds") or a security freeze (See Section V, Paragraph 3)]
3. From the website, you can select and print transaction history for up to 12 months for tracking the
   transactions posted to your Card Account. The amount of your available funds is also available on
   the receipt you get when you make a withdrawal or balance inquiry at certain ATMs. You also have
   the right to obtain at least 24 months of written history of Card Account transactions by calling us at
   the number on the back of your card or writing us at Account Services, PO Box 245997, San
   Antonio, Texas 78224-5997. You will not be charged a fee for this information unless you request it
   more than once a month.

## VII. Card and PIN Security–REPORT LOST OR STOLEN CARD

You agree not to give or otherwise make your Card or PIN available to others. If you do, you will be
responsible for any Transactions they conduct, even if they exceed your authorization. For security reasons
you agree not to write your PIN on your Card or keep it in the same place as your Card.
If you believe your Card or PIN has been lost or stolen or that someone has or may transfer or take money
from your Card Account without your permission, report it by calling the Customer Service number below
as soon as possible. You can also write to us at Direct Express®, Payment Processing Services, PO Box
245998, San Antonio, TX 78224-5998 or visit our website at www.usdirectexpress.com. Calling us is the
fastest way to report this loss. Once your Card or PIN is reported to us as lost, stolen or destroyed, your
Card will be cancelled, and you will have no liability for further Transactions involving the use of the
canceled Card.

## VIII. Your Liability for Unauthorized Transactions

1. Tell us AT ONCE if you believe your Card or PIN has been lost or stolen. Telephoning us at the Customer Service number is the best way of keeping your possible losses down. You could lose all the money in your Card Account. If you tell us within two (2) Business Days, you can lose no more than $50 if someone used your Card or PIN without your permission. If you do NOT tell us within two (2) Business Days after you learn of the loss or theft of your Card or PIN, and we can prove that we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500.

   If you can't telephone us, you can write to us at Direct Express®, Payment Processing Services, PO Box 245998, San Antonio, TX 78224-5998. If you are a California resident, you will not be liable for the $500 amount described above in any event. If you are a New York resident, your liability for the unauthorized use of the Card will not exceed $50.

   Also, if the written Transaction history or other Card Transaction information provided to you shows transfers that you did not make, tell us at once. If you do not tell us within 120 days after the transfer allegedly in error was credited or debited to your Card Account, you may not get back any money you lost after the 120 days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip, a hospital stay, or the illness of a family member) kept you from notifying us, we will extend the time periods.

2. Once your Card or PIN is reported lost, stolen or destroyed, the Card will be canceled, and you will have no liability for further Transactions conducted with the Card.

## IX. In Case of Errors or Questions about Your Card Transactions

1. Call the Customer Service number below or write to us at the address below as soon as you can if you think an error has occurred in your Card Account. We must hear from you within 120 days after the transfer allegedly in error was credited or debited to your Card Account. You will need to tell us:
   a. Your name and Card number.
   b. Why you believe there is an error, and the dollar amount involved.
   c. The approximate date when the error took place.
      Please provide us with your street address, email address and telephone number, as well, so that we can communicate with you.

2. If the error cannot be resolved over the phone, you must provide us written notice of the error within 10 Business Days at Direct Express®, Payment Processing Services, PO Box 245998, San Antonio, TX 78224-5998.

3. We will determine whether an error occurred within 10 Business Days (20 Business Days for new Card Accounts opened less than 30 days) after we hear from you, and we will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Card Account within 10 Business Days (20 Business Days for new Card Accounts opened less than 30 days) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 Business Days, we may not credit your Card Account. For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question.

4. We will tell you the results of our investigation within three (3) Business Days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents we used in our investigation to make our determination.

5. If you need more information about the error resolution procedures, call us at the Customer Service number below.

## X. Fees

We will charge you and you agree to pay the fees and charges described on the List of All Fees included with your Card. See the brochure accompanying your Card for ways to avoid fees. If you believe a fee was charged when it should not have been, call Customer Service at the number below.

## XI. Adjustments to Your Card Account

There are occasions when adjustments will be made to your Card Account balance to: reflect a merchant adjustment; resolve a dispute regarding a Transaction posted to your Card; correct deposits or Transactions posted in error; or because the Agency required the return of the Benefits received after you died or were declared incompetent ("Reclamation"). These adjustments could cause your Card Account to have a negative balance. If you do not have sufficient funds in your account to cover a Transaction or fee, the amount owed may be deducted from future credits to your Card Account and/or we may seek reimbursement from you, your estate or beneficiaries. Remember, you always have the right to dispute adjustments posted to your Card Account.

## XII. Our Liability to You

If we do not complete an electronic fund transfer (Transaction) to or from your Card Account on time or in the correct amount according to these Terms, we will be liable for your losses or damages. There are some exceptions, however. We will not be liable, for instance, if:

  a. Through no fault of ours, you do not have enough available funds in your Card Account to complete the Transaction;
  b. We believe you may not have authorized the Transaction;
  c. Circumstances beyond our control (such as fire, flood, water damage, power failure, strike, labor dispute, computer breakdown, telephone line disruption, or natural disaster) prevents or delays the transfer, despite reasonable precautions taken by us;
  d. The debit card system being used, including but not limited to the ATM or POS terminal was not working properly and you knew about the problem when you started the Transaction;
  e. The Agency did not transmit Benefits for us to credit to your Card Account;
  f. Funds in your Card Account were held as a result of legal process, a Transaction hold or security freeze described in these Terms; or
  g. The Transaction could not be completed because your Card was damaged.

## XIII. Suspending or Canceling your Card.

  1. We may temporarily suspend or permanently terminate your use of the Card, including electronic access to your Card Account:
      a. immediately if: you breach any of the provisions of these Terms; we are notified to do so by the Agency; we believe that there has been or may be unauthorized use of your funds, Card or PIN; there are conflicting claims to your funds; you have made more than one claim of unauthorized Transactions; we believe your Card is being used for any unlawful purpose; or we believe you are named as a specially designated national by the Office of Foreign Asset Control or presidential order; or
      b. within 30 days after giving you notice of our intent to suspend or terminate your Card.
  2. You may cancel your Card by giving us prior written notice or telephoning us at the Customer Service number below.
  3. Termination of your Card does not relieve you of your responsibility to reimburse us for any amounts owed to us under these Terms even if you cancel the Card.
  4. You should notify the Agency when your Card is permanently canceled to make other arrangements for receiving your Benefits.

## XIV. LEGAL & GENERAL TERMS

1. **Governing Law.**

   The funds in your Card Account are deemed held in the State of Michigan. Unless a federal law or regulation applies to a specific section of these Terms or use of the Card, these Terms will be governed by and interpreted in accordance with the laws of the State of Michigan. Depending on where you live, you may have additional rights under certain state laws that apply to us and your Card. We will comply with applicable federal and state law.

2. **Limitation on Time to Sue.**

   Unless prohibited by law, an action or proceeding by you to enforce an obligation, duty or right arising under these Terms or applicable law with respect to your Card or Card Account must be commenced within 12 months after the cause of action accrues.

3. **Dispute Resolution,**

   Venue, and Waiver of Right to Jury Trial/Judicial Reference. If you have a problem with or related to your Card or Card Account, please call Customer Service at the number below immediately. In most cases, a telephone call will quickly resolve the problem in a friendly, informal manner. If, however, a dispute cannot be resolved informally, you or we may file a court action in the state where you have told us you reside with a court having subject matter jurisdiction.

   Unless the law provides otherwise or the claim is brought before a court in the State of California, you and we both agree to give up the right to a trial by jury to resolve each dispute, claim, demand, court action, and controversy ("claim") between you and us arising out of or relating to your Card and/or Card Account. This includes, without limitation, claims brought by you as a class representative on behalf of others and claims by a class representative on your behalf as a class member.

   For claims brought in a court in the State of California, you and we agree that such claims shall be resolved by a reference proceeding in accordance with the provisions of Sections 638 et. seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which both of us agree constitutes the exclusive remedy for the resolution of any dispute, including whether the dispute is subject to the reference proceeding. The referee in the reference proceeding (i) shall hear and determine all issues, including but not limited to discovery disputes, (ii) is empowered to enter equitable and legal relief, rule on any motion otherwise permissible under the CCP, and (iii) may issue a decision disposing of all claims which shall be entered by the court as a final, binding and conclusive judgment, subject to appeal. A judicial reference proceeding is a trial decided by a court-appointed referee and not by a jury. You understand that without this jury trial waiver or agreement to submit claims for resolution by a reference proceeding, you may have a right to a jury trial on such matters, but you nevertheless agree voluntarily to waive that right. You acknowledge that you have had the opportunity to discuss this provision with your legal counsel.

4. **Privacy.**

   We and our agents, acting on our behalf, collect nonpublic personal information about you (e.g., your name, address, telephone number, social security number, and date of birth) from the following sources: information we receive from you on applications/enrollments forms for the Card; and information about your Transactions with us or with others, including but not limited to the Agency. We do not release personal nonpublic financial information obtained in connection with this Card program about current or former Cardholders to anyone, except: to process and/or enforce Transactions with us and with others; to facilitate your Card enrollment and Agency payments/adjustments; to provide educational materials and other Card program features; as permitted or required by law, regulation, legal process or court order; to report to local, state and federal authorities if we believe a crime may have been committed involving a Card; or as otherwise requested by you. We restrict access to nonpublic personal information

Case 2:25-cv-10504-RJW-DRG   ECF No. 1, PageID.31   Filed 02/20/25   Page 31 of 31

about you to our agents and employees who have a need to know that information in order to process your Card and Transactions. We maintain physical electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

5. **Assignment.**

You may not assign your rights or obligations in connection with these Terms or your Card to others.

6. **Legal process.**

We may comply with any subpoena, levy or other legal process which we believe in good faith is valid. Unless the law prohibits us, we may notify you of such process by telephone, electronically or in writing. If we are not fully reimbursed for our record search, photocopying and handling costs by the party that served the process, we may charge those costs to your Card Account. We may honor legal process that is served in any manner at any of our offices, including locations other than where the funds or records sought are held, even if the law requires personal delivery at a different location. Note: Certain benefit payments are protected from garnishment by federal and/ or state law, which may impose requirements and limitations on legal process. A fee of up to $50.00 may be assessed for the review and processing of estate claims including the distribution of any remaining funds to a deceased cardholder's estate.

7. **Change in terms.**

We may add to, delete or change these Terms at any time by providing you with prior notice as required by law.

8. **Severability/Waiver.**

If any provision of these Terms is deemed unlawful, void or unenforceable, it will be deemed severed from these Terms and shall not affect the validity and enforceability of the remaining provisions. We may delay enforcing our rights under this Agreement without losing them. Any waiver by you or us will not be deemed a waiver of other rights or the same rights at another time.

9. **Unclaimed Property.**

Under certain circumstances, we are required by state law to relinquish the balance in accounts in which there has been no activity for a specified amount of time, such as deposits, withdrawals, balance inquiry or any other Customer-initiated contact. The time period for relinquishment, also called escheatment, varies by state. You agree that we are not liable for any loss you may incur due to our good faith compliance with these laws.

10. **Direct Express® Cash Access:**

This feature will allow you to obtain cash from your Direct Express® card at Walmart Money Services or Walmart Customer Service with no purchase necessary. All you need is your Direct Express® card, a valid photo ID, and PIN. There are restrictions on cash limits that can be received through this option. This optional service is available in the U.S. and Puerto Rico. No additional Walmart fees apply. Additional authorized retailers may be offered in the future.

The Direct Express® Debit Mastercard® card is issued by Comerica Bank, pursuant to a license by Mastercard International Incorporated. Mastercard® is a registered trademark of Mastercard International Incorporated.

Customer Service: 1-888-741-1115