## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JESSICA MARINO and
ALEXANDRIA SEBESTA,
individually and on behalf of a class of
similarly situated persons and entities

          Plaintiffs,

v.

COMERICA BANK,

          Defendant.

Case No. 2:25-cv-10504

Honorable Robert J. White

Magistrate Judge David R. Grand

---

## <u>MOTION TO DISMISS</u>

Defendant Comerica Bank, by its attorneys, Dykema Gossett PLLC, files this motion to dismiss Plaintiffs' Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), for the reasons set forth in the accompanying Brief in Support.

In accordance with LR 7.1(a), there was a conference between counsel for the Parties during which counsel for Comerica explained the nature of the Motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, Defendant requests that this Court grant its Motion and enter an Order dismissing the Complaint with prejudice and granting such other relief in favor of Defendant and against Plaintiffs as the Court deems necessary and just.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/ Nasseem S. Ramin
Thomas M. Schehr (P54391)
Theodore W. Seitz (P60320)
Andrew J. Kolozsvary (P68885)
Nasseem S. Ramin (P73513)
Attorneys for Defendant
400 Renaissance Center, 37th Floor
Detroit, MI 48243
(313) 568-6800

Date: April 28, 2025

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JESSICA MARINO and
ALEXANDRIA SEBESTA,
individually and on behalf of a class of
similarly situated persons and entities

        Plaintiffs,

v.

COMERICA BANK,

        Defendant.

Case No. 2:25-cv-10504

Honorable Robert J. White

Magistrate Judge David R. Grand

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF ISSUES PRESENTED............................................ viii

STATEMENT OF CONTROLLING AUTHORITY...............................ix

INTRODUCTION ...........................................................................1

BACKGROUND ............................................................................1

    A.    Comerica's Obligations Regarding the Direct Express Program .........2

    B.    Comerica's Earnings ..............................................................3

    C.    Terms of Use ........................................................................3

STANDARD OF REVIEW ................. **ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT ..................................................................................5

I.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT. ..........................................................5

    A.    Plaintiffs Do Not Identify Any Term of the Contract that Was Breached, Which is Fatal to their Claim. ...............................5

    B.    Treasury Prohibits Comerica from Paying Cardholders Interest.........7

    C.    The Court Should Not Read An "Interest Follows Principal" Term Into the Contract. ........................................................8

    D.    Direct Express Prepaid Cards Are Not Special Deposits, and the Argument is a Red Herring. ................................................10

        1.    Special vs. General Deposits....................................................11

        2.    Plaintiffs Plead No Facts Showing a Special Deposit. .............13

        3.    The Legal Arguments in Plaintiffs' Complaint Do Not Show a Special Deposit. ........................................................15

            a.    Owner of the Funds .....................................................16

            b.    Unique routing numbers and BINs...............................16

            c.    Set-Off Rights.............................................................17

II.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR CONVERSION OR BREACH OF FIDUCIARY DUTY. ...........................19

    A.    The Existence of the Contract Bars These Claims...............................19

B.      Plaintiffs' Claims for Common Law and Statutory Conversion
        Fail as a Matter of Law. ....................................................................20

C.      The Breach of Fiduciary Duty Claim Fails as a Matter of Law..........22

CONCLUSION AND RELIEF REQUESTED .......................................................23

CERTIFICATE OF SERVICE ............**ERROR! BOOKMARK NOT DEFINED.**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AFSCME v. Bank One*,
    267 Mich. App. 281 (2005) ...............................................................21

*Alshaibani v. Litton Loan Servicing, LP*,
    528 F. App'x 462 (6th Cir. 2013) .......................................................6

*Armengau v. Cline*,
    7 F. App'x 336 (6th Cir. 2001) ...........................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................4

*Bassett v. NCAA*,
    528 F.3d 426 (6th Cir. 2008) .............................................................4

*Borgess Hosp. v. Union Indus. Tr. & Sav. Bank*,
    265 Mich. 156 (1933) ...........................................................12, 14, 17

*Boyce v. Martin*,
    46 Mich. 239 (1881) .......................................................................5, 10

*Boyd v. Sachs (In re Auto Specialties Mfg. Co.)*,
    153 B.R. 457 (W.D. Mich. 1993) .....................................................22

*Carhartt, Inc. v. Innovative Textiles, Inc.*,
    323 F. Supp. 3d 917 (E.D. Mich. 2018) ............................................6

*Delphi Auto. PLC v. Absmeier*,
    167 F. Supp. 3d 868 (E.D. Mich. 2016) ..........................................22

*Forge v. Smith*,
    458 Mich. 198 (1998) .........................................................................9

*Glidden Co. v. Jandernoa*,
    5 F. Supp. 2d 541 (W.D. Mich. 1998)..............................................22

*Grand Rapids Pub. Sch. v. Grand Rapids*,
    146 Mich. App. 652 (1985) ..............................................................10

*Hanley v. Porter*,
    238 Mich. 617 (1927) ................................................................passim

*Hart v. Ludwig*,
    347 Mich. App. 559 (1956) ...............................................................19

*Haviland v. Metro. Life Ins. Co.*,
    876 F. Supp. 2d 946 (E.D. Mich. 2012) .............................................6

*Head v. Phillips Camper Sales & Rental, Inc.*,
    234 Mich. App. 94 (1999) ..................................................................20

*Johnson v. World All. Fin. Corp.*,
    830 F.3d 192 (5th Cir. 2016) ...............................................................9

*Kendzierski v. Macomb Cty.*,
    503 Mich. 296 (2019) ................................................................. vii, 6

*Keyes v. Paducah & I. R. Co.*,
    61 F.2d 611 (6th Cir. 1932) ............................................ vii, 11, 12, 13

*Ladd v. Motor City Plastics Co.*,
    303 Mich. App. 83 (2013) ...................................................................18

*Lawsuit Financial, LLC v. Curry*,
    261 Mich. App. 579 (2004) .................................................................21

*Llewellyn-Jones v. Metro Prop Group, LLC*,
    22 F. Supp. 3d 760 (E.D. Mich. 2014) .............................................19

*Merrill Lynch Mortg. Capital, Inc. v. FDIC*,
    293 F. Supp. 2d 98 (D.D.C. 2003)......................................12, 15, 17

*Owosso Masonic Temple Ass'n v. State Savings Bank*,
    273 Mich. 682 (1935) ................................................................passim

*Pamar Enterprises, Inc. v. Huntington Banks of Michigan*,
    228 Mich. App. 727 (1998) ................................................................20

*Peoples Westchester Sav. Bank v. Fed. Deposit Ins. Corp.*,
    961 F.2d 327 (2d Cir. 1992) ...............................................................12

*Quality Products & Concepts Co. v. Nagel Precision, Inc.*,
469 Mich. 362 (2003) ............................................................................6

*Ram Int'l. Inc. v. ADT Security Services, Inc.*,
555 Fed. App'x 493 (6th Cir. 2014) ....................................................19

*Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.*,
454 Mich. 65 (1997) .....................................................................19, 20

*Riverview Co-op, Inc. v. First Nat. Bank & Trust Co. of Michigan*,
417 Mich. 307 (1983) ...................................................................12, 16

*Rory v. Continental Ins. Co.*,
473 Mich. 457 (2005) ...........................................................................6

*Spizizen v. Nat'l City Corp.*,
516 F. App'x 426 (6th Cir. 2013) .................................................19, 21

*Star-Batt, Inc. v. City of Rochester Hills*,
251 Mich. App. 502 (2002) .................................................................10

*Trotta v. Am. Airlines, Inc.*,
741 F. Supp. 3d 673 (E.D. Mich. 2024) ...............................................9

*Union Guardian Tr. Co. v. Emery*,
292 Mich. 394 (1940) .........................................................................12

*United States v. Butterworth-Judson Corp.*,
267 U.S. 387, 45 S. Ct. 338 (1925) .....................................................18

*Van Buren Charter Twp. v. Visteon Corp.*,
319 Mich. App. 538 (2017) ..................................................................6

*Waelder Oil & Gas, Inc. v. Sw. Glass Co. (In re Sw. Glass Co.)*,
332 F.3d 513 (8th Cir. 2003) ..............................................................15

*Weiner v. Klais & Co.*,
108 F.3d 86 (6th Cir. 1997) ..................................................................4

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
413 F.3d 553 (6th Cir. 2005) ................................................................4

*Zaremba Grp., Ltd. Liab. Co. v. Fed. Deposit Ins. Corp.*,
    No. 10-11245, 2011 U.S. Dist. LEXIS 17470 (E.D. Mich. Feb. 23, 2011) .......22

## REGULATIONS

12 C.F.R. § 1005.2(b)(2)..........................................................................................15

31 C.F.R. Part 208............................................................................................. vii, 7, 8

31 C.F.R. § 208.2 ...................................................................................................8

31 C.F.R. § 208.5 ..........................................................................................7, 8, 14

31 C.F.R. § 208.6 ...................................................................................................8

## RULES

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 4, 5

## STATUTES

M.C.L. § 600.2919a(1)(a) .........................................................................................20

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether the Complaint against Defendant Comerica Bank should be dismissed for failure to state a claim where there is no contractual obligation to pay interest to Plaintiffs and where the Department of Treasury expressly bars Comerica from paying interest on Direct Express prepaid cards?

Comerica answers, and this Court should answer, "yes."

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Comerica relies on 31 C.F.R. Part 208; *Keyes v. Paducah & I. R. Co*., 61 F.2d 611 (6th Cir. 1932); *Kendzierski v. Macomb Cty*., 503 Mich. 296 (2019); *Owosso Masonic Temple Ass'n v. State Savings Bank*, 273 Mich. 682 (1935); and *Hanley v. Porter*, 238 Mich. 617 (1927).

# INTRODUCTION

The Court should dismiss Plaintiffs' Complaint against Comerica Bank ("Comerica") under Rule 12(b)(6) for failure to state a plausible claim.

Plaintiffs' Complaint is easily disposed of because there is not a single term in the Terms of Use requiring Comerica to pay interest. To the contrary, Comerica is barred by the Department of Treasury ("Treasury") from paying interest on Direct Express prepaid cards. Federal regulations provide that Treasury establishes the attributes of Direct Express prepaid cards. Treasury exercised that authority by expressly providing in its Fiscal Agency Agreement ("FAA") with Comerica that the Direct Express accounts "will not accrue interest to the cardholder's benefit." This is undeniably dispositive of Plaintiffs' claims—full stop.

Although there is no need for the Court to address Plaintiffs' attempt to manufacture a claim circumventing Treasury's express mandate against interest, to the extent the Court does so, it will see that Plaintiffs' novel theory is unmoored from applicable law.

# BACKGROUND

Plaintiffs receive benefits from the federal government. (Compl. ¶ 2, ECF No. 1, PageID.2). Plaintiffs elected to have their benefits loaded onto a prepaid card known as a Direct Express® Debit Mastercard® card. *Id*. ¶¶ 14, 15, PageID.5. The Direct Express card allows Plaintiffs to receive their benefits directly through

1

a prepaid debit card without having to open a traditional demand deposit account at a bank. *Id.* ¶ 16, PageID.5-6. As such, "[t]he Direct Express program is an essential instrument for the U.S. Treasury Department to comply with Federal law requiring electronic benefits payments." *Id.* ¶ 17, PageID.6. The Direct Express prepaid cards allow cardholders without a bank account to "spend and access their money," including to "make purchases at stores," "withdraw cash" from ATMs, "get cash back when they make purchases," make payments "online," and "buy money orders." *Id.* ¶¶ 15-16, PageID.5-6.

### A.    Comerica's Obligations Regarding the Direct Express Program

Comerica has been Treasury's "financial agent and is the issuer of the Direct Express Cards" nationwide. *Id.* ¶ 18, PageID.6. Comerica acts "in a fiduciary capacity" on Treasury's behalf under the terms of the FAA, attached as Exhibit 1.[1] Treasury designated Comerica as its "Financial Agent for the purpose of disbursing Federal benefit payments electronically to debit card accounts, as described in this FAA." *Id.* at p. 2, Recitals.

Comerica's obligations in disbursing benefit payments are explicitly set forth in the FAA. Comerica "shall provide the required Debit Card services in accordance with the terms of the [FAA]." *Id.* Comerica's failure to follow the FAA would be a default. *Id.* at p. 11 § 13.

---

[1] The Court should consider the FAA as part of the pleadings. *See* discussion *infra*, pp. 4-5.

The FAA establishes the attributes of the prepaid cards Comerica is to issue under the Direct Express program. *Id.* at p. 20, Ex. A § 10. These include an express prohibition on payment of interest to cardholders: "***Accounts will not accrue interest to the cardholder's benefit***." *Id.* § 10(E) (emphasis added).

The FAA requires Comerica to report to Treasury on the "revenue and earnings" it generates as Financial Agent, including the "value of benefit payments on deposit," "float earnings," and "other revenue or earnings." *Id.* at p. 5 § 4(C) & *Id.* at p. 26, Ex. A § 21.

### B.    Comerica's Earnings

As contemplated by the FAA, Comerica has "'float earnings' on deposits into the accounts of Plaintiffs." (Compl. § B, ECF No. 1, PageID.8). Plaintiffs assert that Comerica has maintained "an average of $3 billion" of deposits from the Treasury, has invested those funds, and has earned interest and other returns. *Id.* ¶ 25.

### C.    Terms of Use

No provision in the Terms of Use requires Comerica to pay interest to Direct Express cardholders. (Ex. A to Compl., ECF No. 1, PageID.23-31). Plaintiffs concede the point. (Compl. ¶ 22, ECF No. 1, PageID.7-8). Instead, Plaintiffs refer to the definition of "Card Account," which states that Plaintiffs own the funds in their account, and the provision that Michigan law applies to the Terms of Use

unless a federal law or regulation applies. (Ex. A to Compl., ECF No. 1, PageID.24-25, 30). Plaintiffs rely on these two provisions to construct a novel legal argument that they are owed interest. (Compl. ¶¶ 34-37, ECF No. 1, PageID.11-12).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

The Sixth Circuit takes a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). The Court may consider documents that are "referred to in the Complaint and are central to the claims," *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), and "other materials that are integral to the complaint," *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005), even if they are not attached to the complaint. Otherwise, "a plaintiff with a legally deficient claim" could "survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

Therefore, the Court should consider the FAA as part of the pleadings.

Plaintiffs expressly refer to Treasury's designation of Comerica as its financial agent for the Direct Express program. (Compl. ¶¶ 3, 18, ECF No. 1, PageID.2, 6). Treasury made that designation via the FAA, which also establishes the terms and conditions under which the Direct Express prepaid cards are to be issued to cardholders. As such, the FAA is central to and dispositive of Plaintiffs' claims, so must be considered under Rule 12(b)(6).

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT.

Plaintiffs claim breach of contract, yet they do not identify a single term in the Terms of Use that Comerica breached. That is because the Terms of Use do not require Comerica to pay interest. The reason is simple: Treasury precludes Comerica from paying interest to cardholders like Plaintiffs. No amount of creative pleading can overcome the fundamental legal conclusion that the unambiguous intent of the Direct Express prepaid card program was not to pay interest to Plaintiffs.

### A.   Plaintiffs Do Not Identify Any Term of the Contract that Was Breached, Which is Fatal to their Claim.

A fundamental tenet of Michigan law is that no interest is owed on contracted indebtedness in the absence of an express agreement to pay interest. *Hanley v. Porter*, 238 Mich. 617, 622 (1927); *see also Boyce v. Martin*, 46 Mich. 239, 240 (1881). "No contracted indebtedness draws interest until due unless

agreed upon." *Hanley*, 238 Mich. at 622. A contract "easily could and should have made it plain if there was any such intent or understanding between the parties." *Id.*

The law also is clear that a court cannot rewrite a contract. The "cardinal rule" of contract interpretation is to ascertain and enforce the parties' intent. *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003). This intent is determined by the language of the contract itself. *Kendzierski v. Macomb Cty.*, 503 Mich. 296, 311 (2019); *Rory v. Continental Ins. Co.*, 473 Mich. 457, 468 (2005) ("[U]nambiguous contracts are not open to judicial construction and must be enforced as written."). This is "because an unambiguous contract reflects the parties' intent as a matter of law." *Kendzierski*, 503 Mich. at 311, *quoting In re Smith Trust*, 480 Mich. 19, 24 (2008).

To state a breach of contract claim, a plaintiff must identify the terms of the contract that were breached. *Haviland v. Metro. Life Ins. Co.*, 876 F. Supp. 2d 946, 957 (E.D. Mich. 2012); *Van Buren Charter Twp. v. Visteon Corp.*, 319 Mich. App. 538 (2017). Failure to do so results in dismissal. *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013); *Carhartt, Inc. v. Innovative Textiles, Inc.*, 323 F. Supp. 3d 917, 922 (E.D. Mich. 2018).

The Court must apply these fundamental legal principles and dismiss Plaintiffs' breach of contract claim. Plaintiffs do not identify a single term in the

Terms of Use that Comerica allegedly breached. In fact, although Plaintiffs concede—as they must—that the Terms of Use govern their relationship, those Terms of Use do not contain an express agreement to pay interest on Direct Express cards. Because Michigan law provides that "[n]o contracted indebtedness draws interest until due unless agreed upon," and Comerica did not agree to pay interest on the Debit Express accounts, there is no breach of contract. *See Hanley*, 238 Mich. at 622. For this reason alone, Plaintiffs' claim fails as a matter of law.

## B.     Treasury Prohibits Comerica from Paying Cardholders Interest.

One reason that the Terms of Use do not entitle Plaintiffs to interest is simple: Treasury expressly prohibited Comerica from paying interest to Direct Express cardholders.

Plaintiffs acknowledge, as they must, that Comerica is merely acting as Treasury's Financial Agent for the Direct Express program. The program is governed by 31 C.F.R. Part 208. Under these regulations, "Treasury may designate a Financial Agent to establish and administer Treasury-sponsored accounts for individuals for the disbursement of Federal payments…." 31 C.F.R. § 208.5. "Such accounts may be established upon terms and conditions that the Secretary considers appropriate or necessary." *Id.* "An individual who receives a Federal

7

payment shall be eligible to open a Treasury-sponsored account under terms and conditions established by Treasury." 31 C.F.R. § 208.6.[2]

As such, Treasury established the terms and conditions applicable to the Direct Express prepaid cards. The FAA sets forth those terms and conditions, expressly mandating the "attributes" the Direct Express cards must and must not have. The FAA **expressly prohibits** payment of interest to cardholders: "Accounts will not accrue interest to the cardholder's benefit." (Ex. 1-A at p. 20 § 10). In other words, Treasury determined that it was neither "appropriate [nor] necessary" to pay Direct Express cardholders interest. 31 C.F.R. § 208.5.

Consistent with Treasury's determination, the Terms of Use do not provide that Plaintiffs will earn interest on Direct Express accounts. Such an agreement is prohibited by the FAA and 31 C.F.R. Part 208. In short, the Direct Express card program was never intended to pay interest to Plaintiffs. Plaintiffs' claim must be dismissed.

### C.    The Court Should Not Read An "Interest Follows Principal" Term Into the Contract.

Because they cannot allege that any provision of the Terms of Use was violated, Plaintiffs resort to creative pleading. Plaintiffs claim that the "Governing

---

[2] "Treasury-sponsored account" is defined as "a Direct Express card account, a U.S. Debit Card account, or another account established pursuant to § 208.5 or § 208.11." 31 C.F.R. § 208.2. "Direct Express card" means "the prepaid debit card issued to recipients of Federal benefits by a Financial Agent pursuant to requirements established by Treasury." *Id.*

Law" section of the Terms of Use requires Comerica to "comply with applicable federal and state law," and that Comerica "fail[ed] to comply with Michigan law." (Compl. ¶ 50, ECF No. 1, PageID.17). The "Michigan law" Comerica allegedly violated is what Plaintiffs characterize as a common-law rule that "interest follows principal." *Id.* ¶ 51, PageID.17. That is the sum and substance of the breach of contract claim. *Id.*, Count I, PageID.16-17.

Plaintiffs' breach of contract claim based on a violation of "applicable law" has no merit. First, Plaintiffs cannot use a generic reference to "applicable law" in a choice of law clause as the basis for a breach of contract suit. Courts have repeatedly rejected such theories. *See Trotta v. Am. Airlines, Inc.*, 741 F. Supp. 3d 673, 677 (E.D. Mich. 2024) (rejecting "theory [that] goes beyond the plain language of the contract by reading in a DOT regulation focused on consumer protection and pricing transparency from the general language of a choice of law provision"); *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) (general reference to "federal laws" in a deed of trust insufficient to support a breach of contract claim based on HUD violations).

Plaintiffs' theory would require the Court to rewrite the Terms of Use to incorporate by reference a common-law "interest follows principal" rule. This the Court cannot do: "When the question of whether another…term has been incorporated by reference depends on the 'exercise of speculation, surmise and

conjecture,' the court will refuse to rewrite the contract." *Forge v. Smith*, 458 Mich. 198 n.21 (1998). Plaintiffs' contract claim fails for this reason alone.

Second, the notion that "interest follows principal" is not an accurate or complete statement of the law. The premise for Plaintiffs' argument is the definition of "Card Account," which states "[y]ou are the owner of the funds." But the definition of "Card Account" does not support Plaintiffs because there is nothing in that definition or the Terms of Use generally where Comerica expressly agreed to pay interest. Without an express agreement to pay interest, Plaintiffs have no right to interest. *See Hanley*, 238 Mich. at 622; *Boyce*, 46 Mich. at 240. Indeed, Treasury, as the governing authority responsible for establishing the terms applicable to the Direct Express cards, expressly prohibited payment of interest to cardholders. Instead, the FAA contemplates that ***Comerica*** will receive "float earnings" as part of the "revenue and earnings" it generates as Financial Agent. As such, the FAA expressly contemplates that Comerica will retain these earnings and not pay them to Direct Express cardholders. Under these circumstances, the common-law doctrine that "interest follows principal" does not apply. *Grand Rapids Pub. Sch. v. Grand Rapids*, 146 Mich. App. 652, 656-657 (1985); *Star-Batt, Inc. v. City of Rochester Hills*, 251 Mich. App. 502, 508 (2002).

### D. Direct Express Prepaid Cards Are Not Special Deposits, and the Argument is a Red Herring.

Plaintiffs' claim that the Direct Express Card accounts are "special deposits"

is a red herring and legally meritless. As explained above, Plaintiffs have no right to interest on the accounts absent an express agreement. The contract does not give Plaintiffs a right to interest and Treasury expressly prohibited it. As such, the Court need not consider Plaintiffs' "special deposit" theory.

Regardless, Plaintiffs do not and cannot allege any facts stating a plausible claim that the Direct Express payments are a special deposit in light of the plain language of the Terms of Use and FAA.

### 1.    Special vs. General Deposits

Plaintiffs' theory is a radical departure from fundamental banking principles. "It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys." *Keyes v. Paducah & I. R. Co.*, 61 F.2d 611, 613 (6th Cir. 1932). As a result, "[t]he very nature of the banking business" gives rise to a "presumption" of the bank's "right to use deposited funds in the general business of the bank…absent any expressed or clearly implied intention otherwise." *Id.*

"A general deposit creates the relation of debtor and creditor between the bank and depositor…." *Owosso Masonic Temple Ass'n v. State Savings Bank*, 273 Mich. 682, 689-90 (1935). The funds "become a fungible part of the bank's general assets and retain no separate identity," and are "subject only to the bank's

duty to pay the creditor-depositor an amount equal to the sums deposited upon the call of the depositor." *Riverview Co-op, Inc. v. First Nat. Bank & Trust Co. of Michigan*, 417 Mich. 307, 317-18 (1983). A "special deposit," in contrast, creates a bailment of property or a trust fund. *Owosso*, 273 Mich. at 690. It "contemplates the return of the identical money deposited," and the bank has "no right to handle or use the money constituting the special deposit." *Id.*

There is a "strong presumption" that a deposit is general. *Peoples Westchester Sav. Bank v. Fed. Deposit Ins. Corp.*, 961 F.2d 327, 332 (2d Cir. 1992); *Owosso*, 273 Mich. at 691. The "agreement of deposit is…controlling." *Union Guardian Tr. Co. v. Emery*, 292 Mich. 394, 413-420 (1940); *see also Merrill Lynch Mortg. Capital, Inc. v. FDIC*, 293 F. Supp. 2d 98, 110 (D.D.C. 2003) ("[T]he existence of an express agreement is the critical determination for whether an account is a general deposit…or a special deposit….").

To establish a special deposit, Plaintiffs must show a mutual agreement that the deposit was "made for a special purpose ***and*** with the understanding it is to be set aside solely for that purpose and not mingled with the other funds of the bank." *Owosso*, 273 Mich. at 691 (emphasis added). "[N]ot only its special purpose must be shown, but also an ***intention on the part of both parties*** that it must be held and used exclusively for such purposes." *Borgess Hosp. v. Union Indus. Tr. & Sav. Bank*, 265 Mich. 156, 161 (1933) (emphasis added) (citation omitted).

12

The Sixth Circuit's decision in *Keyes* is illustrative. In *Keyes*, the plaintiff sought to enjoin the collection of certain taxes. The court granted an injunction conditioned on plaintiff depositing funds with a bank. The bank failed and the plaintiff demanded return of the deposit, arguing it was entitled to preference over the banks' general creditors because the funds were a special deposit.

The Sixth Circuit held that "[i]f the deposit was special, its character must be derived from the terms of the court order directing it, the receipt given by the bank, and the bank's letter acknowledging payment of the draft." *Id.* at 613. The court "fail[ed] to find in any of these instruments…any indication that it was the intention of the court or of the parties that the avails of the draft were to be segregated and kept as a separate fund until its disposition was directed by an order of the court." *Id.* "There was ***certainly no express direction in the order*** of the court to keep the funds deposited separate and distinct from the general funds of the bank, nor is any such direction to be clearly implied." *Id.* (emphasis added). As such, the Sixth Circuit concluded that the plaintiff had not overcome the presumption that the deposit was general. *Id.*

2. <u>Plaintiffs Plead No Facts Showing a Special Deposit</u>.

As a matter of law, Plaintiffs cannot show a special deposit. There is nothing in the Terms of Use or FAA providing that Comerica agreed to set the monies aside and refrain from commingling them with the other funds of the bank. This

13

fact is dispositive. *See Keyes*, 61 F.2d at 613; *Owosso*, 273 Mich. at 691-92; *Borgess Hosp.*, 265 Mich. at 160 ("The bank did not agree to treat the funds as special deposits, nor to set aside the moneys therein deposited for special purposes, and refrain from commingling them with the other moneys of the bank.").

Plaintiffs again ignore that Treasury determined the terms and conditions for the Direct Express prepaid card accounts. 31 C.F.R. § 208.5. The applicable regulation makes clear that Plaintiffs are to be afforded "the same" protections as Comerica's ordinary account holders—not the heightened protections of a special deposit. *Id.* Accordingly, the FAA does not impose any requirement that the funds be set aside, segregated from Comerica's other funds, and not be handled or used by Comerica. (Ex. 1).

Moreover, the FAA and Terms of Use are replete with terms demonstrating that the benefit payments are intended to be general deposits:

- Cardholders may use and withdraw the funds for any purpose, including cash withdrawals, store purchases, online purchases, without limitation or restriction. The ability to withdraw the funds for any purpose is not compatible with the notion they are special deposits. *Owosso*, 273 Mich. at 692 ("There was a mutual understanding withdrawals could be made by the Masonic Temple Association as it saw fit just as if the accounts had not been specially named upon the books of the banks.").

- The funds are to be held in "accounts eligible for FDIC deposit insurance coverage." The FDIC insurance requirement is inconsistent with a special deposit: deposit insurance is specifically designed to address the "very nature of the banking business" that general deposits become part of a bank's general funds, are loaned at to others, and

thus may not be available to repay to depositors if a bank fails; FDIC insurance is not necessary for special deposits because the depositor would be a bailee who would simply reclaim its property that had been kept untouched and segregated by the bank, rather than an insurance claimant. *See e.g.*, *Merrill Lynch Mortg. Capital*, 293 F. Supp. 2d at 103.

- The card accounts must comply with Regulation E. *See* FAA p. 20 (Ex. 1-A § 10(C)). This requirement is inconsistent with a special deposit because Regulation E expressly exempts "an account held by a financial institution under a bona fide trust agreement," *see* 12 C.F.R. § 1005.2(b)(2).

- The funds in the card accounts are subject to transaction holds, security freezes, and adjustments that could result in negative balances, in which case Comerica may deduct the amount the cardholders owe from future credits. Again, Comerica would not be able to take these actions if the funds were a special deposit that Comerica had "no right to handle or use." *Owosso*, 273 Mich. at 690.

- The funds in the card accounts are subject to set-off. This term is incompatible with the notion they are special deposits. *See* infra, pp. 17-18.

- The funds in the card accounts are subject to garnishment. This term is incompatible with the notion they are special deposits, which are not subject to garnishment. *Waelder Oil & Gas, Inc. v. Sw. Glass Co. (In re Sw. Glass Co.)*, 332 F.3d 513, 518-19 (8th Cir. 2003).

All of these federally-established terms and conditions confirm that the funds loaded to the prepaid cards are not special deposits.

### 3.   The Legal Arguments in Plaintiffs' Complaint Do Not Show a Special Deposit.

Plaintiffs' legal arguments—which are not factual allegations that must be accepted as true—do not state a plausible claim that the funds are special deposits.

15

a.    *Owner of the Funds*

Plaintiffs note that the definition of "Card Account" in the Terms of Use states: "You are the owner of the funds in the Card Account." But Plaintiffs' attempt to rewrite the Terms of Use and federal law based on one sentence in a definition flies in the face of basic tenets of contract interpretation. *Hastings Mut. Ins. Co.*, 286 Mich. at 297.

Even when viewed in a vacuum, this language is consistent with an ordinary banking relationship and cannot overcome the presumption that the deposits were general, not specific. There is no dispute that cardholders "own" the funds credited to their accounts. What they "own," however, is the right to "an amount equal to the sums deposited upon the call of the depositor," *Riverview Co-op*, 417 Mich. at 318, not "the return of the identical money deposited." *Owosso*, 273 Mich. at 690.

Regardless, when viewed as a whole—particularly in the context of Treasury's establishment of terms and conditions for the Direct Express program—there is no plausible claim that the Terms of Use reflect a mutual intent to depart from the presumption of a general deposit and transform the Direct Express prepaid cards into a special deposit creating a bailment or trust relationship.

b.    *Unique routing numbers and BINs*

Plaintiffs' allegation that Comerica uses unique routing numbers and bank identification numbers ("BINs") for the Direct Express program is irrelevant. The

16

very same section of the FAA that expressly prohibits interest to cardholders also requires unique routing numbers and BINs. This does not show intent for a special deposit: "[A] bank's internal accounting or categorization of deposits do not affect the existence and validity of a special deposit…." *Merrill Lynch Mortg. Capital, Inc.*, 293 F. Supp. 2d at 109-110; *see also Borgess*, 265 Mich. at 161-163 (that "accounts were opened by plaintiff under special names" was insufficient "to stamp them as special deposits"). "Very frequently a person may open several accounts at the same bank, one for business purposes, another for household uses." *Id.* "Separation of funds in this manner," which "is often accomplished for bookkeeping purposes," does not establish an intent to make a special deposit. *Id.*

The relevant issue is whether Comerica agreed to separate the funds, set them aside, and not handle, use, or mingle them. Comerica's internal accounting or recordkeeping processes, including the federally-required assignment of unique routing numbers and BINs, does not constitute an agreement between Comerica and cardholders that the funds will be segregated and left untouched. As such, it does not render the funds a special deposit.

c.   *Set-Off Rights*

Lastly, Plaintiffs allege that a special deposit should be inferred because "the Terms of Use do not authorize Comerica to set off a cardholder's Direct Express Card for the obligations of a cardholder unless the obligations are directly related

to the cardholder's Direct Express Card." (Compl. ¶ 32, ECF No.1, PageID.10). Plaintiffs are mistaken because any right of set-off is antithetical to the existence of a special deposit. A set-off right arises *only* where the ordinary debtor-creditor relationship between bank and customer exists. *United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 394-395, 45 S. Ct. 338, 340 (1925) ("[T]he relation existing between banks and their depositors is that of debtor and creditor, out of which the right of set-off arises."); *Ladd v. Motor City Plastics Co.*, 303 Mich. App. 83, 98 (2013), *citing Hansman v. Imlay City State Bank*, 121 Mich. App. 424, 430 (1982).

Plaintiffs admit that a right of set-off exists under the Terms of Use. They admit that such a right is unique to general deposits that become the property of the bank. Indeed, the Terms of Use expressly grant Comerica a broad right of set-off: "If you do not have sufficient funds in your account to cover a Transaction or fee, the amount owed may be deducted from future credits to your Card Account and/or we may seek reimbursement from you, your estate or beneficiaries." (Ex. A to Compl. at Article XI, ECF No.1, PageID.29). The existence of this right confirms that Comerica and the cardholders are in a debtor-creditor relationship, confirms Comerica had a right to handle or use the funds, and defeats Plaintiffs' claim that the funds are a special deposit.

In sum, the Terms of Use control and there is no mutual agreement that the

Direct Express funds constitute a special deposit. The breach of contract claim should be dismissed for failure to state a claim for this reason as well.

## II.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR CONVERSION OR BREACH OF FIDUCIARY DUTY.

### A.   The Existence of the Contract Bars These Claims.

Plaintiffs' "alternative" claims for common law conversion, statutory conversion, and breach of fiduciary duty are barred under the long-standing Michigan doctrine precluding non-contract claims where the parties' relationship is governed by a contract. *Hart v. Ludwig*, 347 Mich. App. 559, 565 (1956); *Llewellyn-Jones v. Metro Prop Group, LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014). Under this doctrine, "a defendant acting pursuant to a contract is liable in tort only if he or she 'owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.'" *Ram Int'l. Inc. v. ADT Security Services, Inc.*, 555 Fed. App'x 493, 497 (6th Cir. 2014); *see also Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.*, 454 Mich. 65, 84 (1997).

The Sixth Circuit has applied this doctrine to dismiss claims for conversion of funds allegedly held by a bank in trust. *See Spizizen v. Nat'l City Corp.*, 516 F. App'x 426, 429 (6th Cir. 2013) ("If Spizizen believed that the Bank violated [its] express agreement or violated its duty to hold funds in trust, a breach-of-contract claim would be the appropriate remedy….The fact that a trust account may have

specific or special funds does not alter the nature of the relationship—the security document is still the controlling contract.").

Plaintiffs' conversion and fiduciary duty claims are not "separate and distinct" from their contract claim. They arise from the very same underlying factual allegations: that Comerica's relationship with Plaintiffs in connection with their Direct Express accounts give rise to a right to interest. But Plaintiffs concede that there is a contract with Comerica—the Terms of Use—that governs this relationship. That contract "control[s] the nature and extent of the obligations of the parties." *Rinaldo's*, 454 Mich. at 84. And that contract does not give Plaintiffs a right to interest. Plaintiffs cannot use tort law to create a right to interest in light of the express contract governing their relationship.

### B. Plaintiffs' Claims for Common Law and Statutory Conversion Fail as a Matter of Law.

Moreover, Plaintiffs cannot state a claim for common law or statutory conversion. Under Michigan law, conversion is "any distinct act of dominion [that] has been wrongfully exerted over another person's property." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111 (1999); *Pamar Enterprises, Inc. v. Huntington Banks of Michigan*, 228 Mich. App. 727, 733 (1998). Statutory conversion is "[a]nother person's stealing or embezzling property or converting property to the other person's own use." M.C.L. § 600.2919a(1)(a).

"[T]o support an action for conversion of money, the defendant must have

20

obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579, 591 (2004) (internal quotation marks omitted). "[A]n action for the conversion of bank account funds can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it." *AFSCME v. Bank One*, 267 Mich. App. 281, 296 n6 (2005), *quoting Check Reporting Services, Inc. v. Michigan National Bank-Lansing*, 191 Mich. App. 614, 626 (1991) (internal quotations omitted).

Plaintiffs' conversion claims are legally deficient. First, "[t]he relationship between a bank and its depositor is one of a debtor-creditor." *Spizizen*, 516 F. App'x at 429. Accordingly, a claim of conversion is only sustainable if Comerica obtained the funds without Plaintiffs' consent to the creation of a banking relationship with Comerica. Here, Plaintiffs voluntarily created a debtor-creditor relationship with Comerica when they chose to use the Direct Express program. *See, e.g., id.* (plaintiff "clearly consented to the creation of a debtor-creditor relationship…when he deposited money into his checking account"). Plaintiffs cannot now claim that Comerica did not have their consent to disburse benefits in accordance with the FAA and the Terms of Use. *Lawsuit Financial*, 261 Mich. App. at 591. The conversion claims fail as a matter of law.

Second, Comerica had no obligation to return any "specific cache" of money "entrusted to [its] care." *See AFSCME*, 267 Mich. App. at 296 n6 (funds in checking account not subject to conversion because no obligation to return "specific cache of money" rather than "an amount of money equal to the amount of money withdrawn"); *Zaremba Grp., Ltd. Liab. Co. v. Fed. Deposit Ins. Corp.*, No. 10-11245, 2011 U.S. Dist. LEXIS 17470, *31-33 (E.D. Mich. Feb. 23, 2011) (certificates of deposit not subject to conversion because "Defendant owes Plaintiff an amount of money equal to the amount of money in Plaintiff's CD accounts— rather than specific identifiable money"). Funds credited to cardholders represent an obligation for Comerica to pay on demand an amount equal to the amount deposited, thereby allowing Plaintiffs to "spend and access their money." Comerica was not required to return a specific cache of money. As such, the conversion claims fail as a matter of law.

### C.   The Breach of Fiduciary Duty Claim Fails as a Matter of Law.

The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) proximately causing damages. *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016).

"Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations." *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998). "To impose such a duty would be too radical a departure from

well-established, traditional banking laws." *Id.* s*ee also Boyd v. Sachs (In re Auto Specialties Mfg. Co.)*, 153 B.R. 457, 479 (W.D. Mich. 1993) ("[T]he typical debtor-creditor relationship is not normally one including fiduciary duties.").

Plaintiffs' claims arise from their ongoing banking relationship with Comerica. As Plaintiffs' bank for the Direct Express funds, Comerica is not Plaintiffs' fiduciary as a matter of law. Indeed, Comerica acts as a fiduciary on Treasury's behalf (not Plaintiffs') as Treasury's Financial Agent under the terms the FAA. Nothing in the FAA or Terms of Use require Comerica to act as a cardholder's fiduciary. Moreover, for the reasons discussed above, Plaintiffs' unsupported legal conclusion that the Direct Express funds constitute a special deposit fails as a matter of law. As such, this flawed legal theory cannot support the fiduciary duty claim, and this claim, too, fails as a matter of law.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

Defendant Comerica Bank respectfully requests that the Court grant its Motion to Dismiss and enter an order dismissing the Complaint with prejudice.

*Respectfully submitted,*

DYKEMA GOSSETT PLLC

By: /s/ Nasseem S. Ramin
    Thomas M. Schehr (P54391)
    Theodore W. Seitz (P60320)
    Andrew J. Kolozsvary (P68885)
    Nasseem S. Ramin (P73513)
    *Attorneys for Defendant*
    400 Renaissance Center, 37th Floor
    Detroit, MI 48243
Date:  April 28, 2025    (313) 568-6800

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2025, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.


*/s/ Nasseem S. Ramin*