UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA MARINO, et al.,

    Plaintiffs,

v.

COMERICA BANK, et al.,

    Defendants.

Case No. 25-cv-10504

Honorable Robert J. White

**ORDER GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS (ECF No. 21) AND GRANTING COMERICA BANK'S MOTION TO DISMISS (ECF No. 24)**

Plaintiffs Jessica Marino and Alexandria Sebesta (Plaintiffs) sued Defendants Comerica Bank (Comerica) and the United States (the Government) on behalf of themselves and a proposed class. (ECF No. 15, PageID.319). The lawsuit arises from a federal benefits program instituted by the Government and administered by Comerica. (*Id.* at PageID.320). The program allowed benefit recipients like Plaintiffs to access benefit payments electronically through a prepaid debit card. (*Id.*). The Government provided the benefit payments to Comerica; in turn, Comerica managed the debit card account for benefit recipients. (*Id.* at PageID.326).

As recipients of the benefit payments, Plaintiffs claimed that they are the rightful owners of any interest the benefit payments accrued while being held at

Comerica. (*Id.* at PageID.332–333).  Because Comerica retained the interest instead of disbursing it to Plaintiffs, Plaintiffs believe they are entitled to damages. (*Id.* at PageID.321).  Plaintiffs brought claims against Comerica for (1) breach of contract; (2) common law conversion; (3) statutory conversion; and (4) breach of fiduciary duty. (*Id.* at PageID.340–44).  Plaintiffs also brought a claim against the Government for violation of the Fifth Amendment Takings Clause. (*Id.* at PageID.344–47). Plaintiffs alleged that the Government, through its agent Comerica, effected a taking by depriving benefit recipients of the interest and earnings the recipients were rightfully entitled to. (*Id.* at PageID.344–45).

Comerica and the Government filed separate motions to dismiss Plaintiffs' claims against them. (ECF No. 21; ECF No. 24).  The Government moved to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim, (ECF No. 21), and Comerica moved to dismiss under Rule 12(b)(6), (ECF No. 24).  The Court held a hearing on the motions on March 3, 2026. (ECF No. 28).  As explained below, the Court will grant both motions.  (ECF No. 23, PageID.471).

## I.     Background

Plaintiffs and members of the proposed class are the recipients of electronic benefit payments from the Government. (ECF No. 15, PageID.320).  The benefits received include Social Security, Supplemental Security Income, and Veterans

2

Benefits. (*Id.*).  Plaintiffs and proposed class members collect their benefits through the "Direct Express" program (the Program) and are Direct Express account holders. (*Id.* at PageID.322, 325, 338).  The Government, specifically, the U.S. Treasury, established the Program as a way to disburse federal benefit payments electronically.[1] (*Id.* at PageID.320, 325–26).  If benefit recipients choose to receive their payments through the Program, they receive a prepaid debit card known as the Direct Express Debit MasterCard (the Direct Express Card). (*Id.* at PageID.325).  Benefit recipients do not need a bank account to sign up for the Direct Express Card. (*Id.*).  Instead, on payment day, the benefit payments are automatically deposited to the recipient's Direct Express account and accessible through the Direct Express Card. (*Id.*).  Cardholders can use their card to make purchases, withdraw cash from ATMs, and get cash back when they make purchases. (*Id.* at PageID.325–26).

The Government does not issue the cards, nor does it hold user accounts. (*Id.* at PageID.326).  Instead, as required by statute, the Direct Express Cards and associated accounts are issued and maintained by a financial institution. *See* 31 U.S.C. § 3332.  Here, the Government designated Comerica as its financial agent for the Program.[2] (ECF No. 15, PageID.326).  Comerica issues and manages Direct

---

[1] 31 U.S.C. § 3332 mandates that federal benefit payments be paid electronically.
[2] The Government replaced Comerica with the Bank of New York Mellon, effective January 3, 2025. (ECF No. 15, PageID.320).  At the time Plaintiffs filed the amended complaint, however, Comerica continued to administer the Program. (*Id.*).

Express Cards and associated accounts, whereas the Government's role is limited to depositing the benefit payments into the recipients' accounts at Comerica. (*Id.* at PageID.320, 326).   As a result, Comerica, and not the Government, "holds the customer relationship with the cardholder." (*Id.* at PageID.377).   Each year, the Government distributes billions of dollars of benefit payments to Comerica for disbursement (the Funds). (*Id.* at PageID.321).

To govern their relationship, Comerica and the Government entered into a Financial Agency Agreement (the FAA). (*Id.* at PageID.360).   The FAA sets forth how Comerica should administer the Program. (*Id.* at PageID.379–86).   Although Direct Express cardholders are not parties to the FAA, the FAA provides that cardholder accounts "will not accrue interest to the cardholder's benefit." (*Id.* at PageID.379).   A different agreement governs the relationship between Comerica and cardholders, referred to as the Terms of Use. (*Id.* at PageID.351).   To participate in the Program, benefit recipients like Plaintiffs must agree to the Terms of Use. (*Id.* at PageID.326).   The Terms of Use defines "Card Account" as the "account held at Comerica Bank to which your Benefits are electronically transmitted by [the Government] and which you access using your card." (*Id.* at PageID.351).   The definition also provides that benefit recipients "are the owner of the funds in the Card Account." (*Id.* at PageID.351–52).   Michigan law governs the Terms of Use. (*Id.* at PageID.357).

Comerica does not provide its services as a financial agent for free.  Instead, it recovers the cost it incurs to administer the Program by charging fees for certain ATM cash withdrawals, purchases at merchant locations, and monthly paper statements. (*Id.* at PageID.328).  Comerica also earns money on the Funds deposited by the Government for distribution to benefit recipients through interest and investment returns. (*Id.*).  That is, while the Funds are at Comerica, but before they are withdrawn by the benefit recipients, Comerica earns interest and other investment income on the Funds. (*Id.*).  The Court will refer to the money Comerica earns on the Funds as the "Earnings."  Plaintiffs alleged that the Earnings exceed $100 million per year. (*Id.*).

Plaintiffs also alleged that the accounts at Comerica are not "ordinary" or "general" deposit accounts. (ECF No. 15, PageID.328–29).  That means that once the Funds are deposited, they do not become available for Comerica's use as is typical of a bank's debtor-creditor relationship with its customers. (*Id.*).  Rather, the Direct Express accounts are "special deposit accounts" that render Comerica merely a custodian of the Funds. (*Id.*).  Accordingly, the Funds belong solely to cardholders, Comerica cannot use the Funds for its own purposes, and the Earnings generated from the Funds belong to Plaintiffs. (*Id.* at PageID.331–32).  Similarly, if the Government authorized Comerica to retain the Earnings, the Government effected a taking without just compensation and thereby violated the Fifth Amendment. (*Id.* at

5

PageID.345).  Plaintiffs theorized that the Government, acting through Comerica, seized the funds for the public purpose of compensating Comerica for operating the Program. (*Id.*).

Defendants rebuked Plaintiffs' arguments in their motions to dismiss. Comerica argued that Plaintiffs had no right to the Earnings given the lack of contractual terms to that effect, the FAA's prohibition on accrual of interest in cardholder accounts, and the amended complaint's failure to distinguish the cardholder accounts as special deposits. (ECF No. 24, PageID.516–35).  As for the Government, it argued that Plaintiffs do not have standing to bring their claim, and even if they do, they do not have a cognizable property interest in the Earnings as required to state a Takings Clause claim. (ECF No. 21, PageID.440).

## II.    Legal Standard

A defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Once challenged, the plaintiff carries the burden of proving jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  Courts characterize Rule 12(b)(1) motions as either a "facial attack or a factual attack" on subject matter jurisdiction. *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).  When a Rule 12(b)(1) motion "attack[s] the claim of jurisdiction on its face . . . all allegations of the plaintiff must be considered as true." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th

6

Cir. 2007) (citation omitted).  But when the defendant "attack[s] the factual basis for jurisdiction . . . the trial court must weigh the evidence" to decide whether it has subject matter jurisdiction. *Id.*; *see also Ohio Nat'l Life. Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A defendant may also move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In deciding the motion, courts must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

## III.   Analysis

The Government moved to dismiss Plaintiffs' Fifth Amendment Takings Clause claim for lack of standing. (ECF No. 21, PageID.445–47).  The Government argued that Plaintiffs suffered no injury either traceable to or redressable by the Government. (*Id.*).  In the event the Court finds that Plaintiffs have standing, the Government asserted that Plaintiffs have no cognizable property interest in the Earnings sufficient to state a claim. (*Id.* at PageID.448–55).

According to Comerica, Plaintiffs' breach of contract, conversion, and fiduciary duty claims cannot survive under Rule 12(b)(6). (ECF No. 24, PageID.513).  First, no contractual provision exists that entitles Plaintiffs to the Earnings. (*Id.* at PageID.516–31).  Second, the pleadings did not sufficiently allege that the Funds were special deposits such that Plaintiffs could claim the Earnings. (*Id.* at PageID.523–31).  Third, because Plaintiffs did not adequately differentiate the Earnings from a general deposit, Comerica was able to use the Funds as they would any other deposit and did not owe Plaintiffs fiduciary duties. (*Id.* at PageID.532–35).

As explained further below, although the Court finds that Plaintiffs did have standing to bring their Takings Clause claim, the claim still fails because Plaintiffs had no property interest in the Earnings.  Likewise, Plaintiffs' claims against Comerica either fail as a matter of law or are insufficiently alleged.

### A.    Plaintiffs Have Standing to Bring Their Takings Clause Claim.

The Government argued that Plaintiffs lack standing for their Takings Clause claim. (ECF No. 21, PageID.444).  According to the Government, Plaintiffs failed to allege that they suffered an actual injury. (*Id.* at 445–46).  What is more, the supposed injury is neither traceable to nor redressable by the Government. (*Id.* at PageID.446–48). Plaintiffs disagreed.  Plaintiffs' theory is that Comerica acted upon the Government's instruction when it withheld the Earnings.   (ECF No. 23,

PageID.487).   As a result, the injury (withheld Earnings) is traceable to the Government's conduct and can be redressed through just compensation. (*Id.* at PageID.487–88).

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' or 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  To satisfy Article III's "case-or-controversy requirement," the plaintiff must have standing to sue. *Id.*  To establish standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Contrary to the Government's argument, the Court finds Plaintiffs have standing to bring their claim.

### 1. Injury

Plaintiffs alleged that as the rightful owners of the Earnings, Comerica's failure to disburse the Earnings caused them monetary harm. (ECF No. 15, PageID.344–47).  But, per the Government's argument, Plaintiffs suffered no injury because Plaintiffs' individual card accounts never accrued interest or earned specific income. (ECF No. 21, PageID.445).  Instead, Plaintiffs claimed entitlement to the overall Earnings. (*Id.* at PageID.445).  Because that claim is not particularized as to

each Plaintiff and proposed class member, Plaintiffs failed to establish standing. (*Id.* at PageID.445–46).

Although monetary harm is traditionally a basis for lawsuits in American courts, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021), the issue here is whether the monetary harm is sufficiently particularized. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted) (citation modified). Plaintiffs claimed that they are the owner of the Funds and that the Funds are special deposits such that Plaintiffs are entitled to the Earnings. (ECF No. 15, PageID.334–37, 346–47). Thus, each Plaintiff and proposed class member suffered harm from the use of their accounts to generate the Earnings without permission and in violation of the Funds' status as special deposits. (*Id.* at PageID. PageID.344–47). The Court finds these allegations sufficiently establish an individualized harm; all benefit recipients involved possessed their own accounts that the Government (through Comerica) allegedly took advantage of. At this stage in the litigation, the Court does not find that Plaintiffs needed to allege specific dollar amounts for each Plaintiff and class member. Plus, at the hearing, counsel for Plaintiffs indicated such calculations were

10

presently impossible given that Comerica redacted relevant information as to how it generated the Earnings.

The Government also claimed that because Plaintiffs lack a cognizable property interest in the Earnings, Plaintiffs suffered no injury for standing purposes. (ECF No. 21, PageID.445–46).  But that argument goes to the merits of Plaintiffs' Takings Clause claim, not the standing assessment. *See Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (citation omitted) (citation modified) ("one must not confuse weakness on the merits with absence of Article III standing"); *Grumpy's Bail Bonds, LLC v. Rutherford Cnty., Tenn.*, No. 3:20-cv-00923, 2022 WL 3051004, at *10 (M.D. Tenn. Aug. 2, 2022) ("[I]n evaluating standing, the Court looks at the link between the injury and the challenged action, not whether the challenge to the defendant's action is substantively meritorious."). That is, Plaintiffs' ability to establish an injury for Article III standing purposes is separate and distinct from whether the claim survives under Rule 12(b)(6).  The fact that none of the cases the Government cited in support of its argument explicitly address standing bolsters the Court's reading, (ECF No. 21, PageID.445–46). *See McCarthy v. Cleveland*, 626 F.3d 280 (6th Cir. 2010); *Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004); *Elec. Welfare Tr. Fund v. United States*, 166 Fed. Cl. 709

(2023).  Therefore, the Court finds that Plaintiffs pled an injury sufficiently for standing purposes.

### 2. Traceability

Second, the Government claimed that the alleged injury is not traceable to any Government action. (ECF No. 21, PageID.446).  Rather, Comerica is responsible for the failure to pay Earnings. (*Id.*).  Plaintiffs argued that as the Government's agent, Comerica acted at the Government's behest. (ECF No. 23, PageID.486).  And even if the Government and Comerica did not have an agency relationship, the Government still instructed Comerica through the FAA not to disburse to the Earnings to Plaintiffs. (*Id.*).  So an indirect theory of traceability applies. (*Id.*).

An injury must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan*, 504 U.S. at 560–61)).  "[I]f agents of the federal government accomplish takings of private property . . . it is the federal government that is liable for suit, not the agent." *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 (Fed. Cir. 2005) (citing *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 21–22 (1940)).  Moreover, "the fact that an injury is indirect does not destroy standing as a matter of course." *Parsons*, 801 F.3d at 713.  "An indirect theory of traceability requires that the [defendant] cajole, coerce, command." *Turaani v. Way*, 988 F.3d 313, 316 (6th Cir. 2021).

Ultimately, the plaintiff must show that "the defendant's actions had a 'determinative or coercive effect' upon the third party." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

So, how does one establish that Comerica is an agent of the Government? Well, the Government has conceded as much given the FAA's designation of Comerica as the Government's "Financial Agent[.]" This implies strongly that an agency relationship exists between the two sufficient to establish traceability. (ECF No. 15, PageID.361). Absent an agency relationship, however, the Court can trace Comerica's actions indirectly to the Government. The FAA states explicitly that "[a]ccounts will not accrue interest to the cardholder's benefit." (*Id.* at PageID.379). The Government's direction about the accrual of interest clearly constrained Comerica's ability to remit the Funds to Plaintiffs. The Court need not make any inferential leaps to determine that Comerica followed that instruction. If Comerica allowed interest to accrue, it would breach the FAA. The Court therefore finds sufficient evidence exists to trace Comerica's conduct to the Government.

### 3.    Redressability

The Government argued that it cannot redress Plaintiffs' injury because it is not the custodian of Earnings, Comerica is. (ECF No. 21, PageID.447). Plaintiffs responded that the Government could redress the injury by justly compensating them for the Funds seized by Comerica. (ECF No. 23, PageID.487–88). In their amended

13

complaint, Plaintiffs requested relief from the Government in the "amount of the Earnings Comerica has wrongfully diverted to its own use." (ECF No. 15, PageID.348).

Redressability is the likelihood that the requested relief will redress the alleged injury. *Nader v. Blackwell*, 545 F.3d 459, 471 (6th Cir. 2008). Plaintiffs claimed the Government, through Comerica, wrongfully seized the Earnings from Plaintiffs in violation of the Fifth Amendment. (ECF No. 23, PageID.345–46). If Plaintiffs prove their claim against the Government, then just compensation in the form of the monetary value of the Earnings will redress their injury. Because Plaintiffs satisfy the elements of standing, the Court will deny the motion to dismiss for lack of subject matter jurisdiction.

### B.     Plaintiffs Failed to Allege a Claim Against the Government.

The standing analysis does not end the Court's inquiry. The Government also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (ECF No. 21, PageID.448). That is, Plaintiffs do not have a cognizable property interest in the Funds, and even if they did, no "taking" occurred. (*Id.*).

The Fifth Amendment provides that the Government shall not take private property "for public use, without just compensation." U.S. Const. amend. V. The purpose of the Fifth Amendment is to "prevent the government 'from forcing some

14

people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 478 (6th Cir. 2004) (citation omitted).   "A party challenging governmental action as an unconstitutional taking bears a substantial burden." *Id.* The Sixth Circuit uses the Federal Circuit's test to determine whether a taking violated the Fifth Amendment. *Id.* at 481 (recognizing the Federal Circuit's "extensive expertise in federal-takings law in light of its specialized jurisdiction"). The test asks: (1) "whether the claimant has established a cognizable 'property interest' for the purposes of the Just Compensation Clause" and (2) if a cognizable property interest is implicated, "whether a taking occurred." *Id.* (quoting *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003)).

Plaintiffs do not have a cognizable property interest in the Earnings, so they fail the test.  The Constitution "neither creates nor defines the scope of property interests compensable under the Just Compensation Clause." 365 F.3d at 481; *see also Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (citation omitted) ("the Constitution protects rather than creates property interests").  Instead, "the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips*, 524 U.S. at 164 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  As the Government pointed out, the Earnings are the byproduct of federal

15

benefit payments. (ECF No. 21, PageID.449–51). The law is clear on this point: benefit payments are entitlements and do not qualify as cognizable property interests. *See Bowen v. Gilliard*, 483 U.S. 587, 604–05 (1987); *Adams v. United States*, 391 F.3d 1212, 1225 (Fed. Cir. 2004); *see Altschuld v. Comm'r of Soc. Sec.*, No. 18-3972, 2019 WL 5105459, at *2 (6th Cir. Aug. 16, 2019) (holding claimants did not have property right to accrued Social Security benefits). The reasoning is that "Congress is not, by virtue of having instituted a social welfare program, bound to continue it at all, much less at the same benefit level." *Bowen*, 483 U.S. at 604. So if Plaintiffs do not have a legitimate property interest in the principal (the Funds), it follows that they do not have a legitimate property interest in its derivatives (the Earnings).

Plaintiffs responded that because Comerica received and held the Funds as special deposits, the Funds (and Earnings) transformed from benefit payments to specific sums imbued with a cognizable property interest. (ECF No. 23, PageID.489–94). As evidence of this metamorphosis, Plaintiffs pointed to language in the FAA that "[o]nce benefit payments are disbursed by the U.S. Government to a cardholder's registered (activated) Debit Card, the benefit payments belong to the cardholder and are no longer in the care, custody, or control of the United States" and in the Terms of Use that participants in the Program "are the owner of the funds in the Card Account." (ECF No. 23, PageID.477, 494–95; ECF No. 15, PageID.328–

16

29, 351–52, 366).  But whether the Government or Comerica held the Funds does not alter their fundamental character.  The Funds, and therefore the Earnings, would not exist independently of the benefits program.  Plus, the FAA continues to refer to the Funds as benefit payments even after Plaintiffs take possession. *See* ECF No. 15, PageID.366 ("the benefit payments belong to the cardholder").  The same is true of the Terms of Use. *See id.* at PageID.351 (defining "Card Account" as "[t]he account held at Comerica Bank to which your Benefits are electronically transmitted").

In addition, the Terms of Use on its own cannot establish a property interest, as Plaintiffs claimed.  (ECF No. 23, PageID.494–95).  The Government is not a party to and therefore not bound by the Terms of Use.  A contract between two private parties does not change the form of the benefit payments for purposes of the Government's involvement.  Ultimately, without a cognizable property interest, no taking can occur.  Therefore, the Court will dismiss Plaintiffs' claim against the Government.

## C.    Plaintiffs' Breach of Contract Claim Fails as a Matter of Law.

Plaintiffs argued that Comerica breached the Terms of Use by not paying the Earnings to benefit recipients. (ECF No. 15, PageID.340–41).  Per the Terms of Use, Michigan law governs the breach of contract claim.  (ECF No. 15, PageID.357).

"To recover for breach of contract under Michigan law, a plaintiff must allege: (1) the existence of a contract; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach caused the plaintiff's injury." *Derbabian v. Bank of Am., N.A.*, 587 Fed. App'x 949, 953 (6th Cir. 2014). But the Terms of Use contain no provision requiring the payment of interest on the Funds. Because Comerica cannot breach a contract term that does not exist, the Court finds that Plaintiffs failed to state a claim. To circumvent the absence of an applicable contract term, Plaintiffs asked the Court to read in an "interest follows principal" rule to the Terms of Use. (ECF No. 15, PageID.340–41; ECF No. 26, PageID.566–71). Plaintiffs' logic proceeded as follows: (1) Michigan law governs the Terms of Use; (2) Michigan common law dictates that "interest follows principal"; (3) interest must therefore follow principal under the Terms of Use; and (4) Comerica breached the Terms of Use by failing to pay the Earnings to benefit recipients. (*Id.*).

The common law offers rules for contractual interpretation. It does not allow courts to rewrite valid agreements. *See Andreson v. Progressive Marathon Ins. Co.*, 322 Mich. App. 76, 85 (2017) ("It is not the province of the judiciary to rewrite contracts to conform to the court's liking, but instead to enforce contracts as written and agreed to by the parties.") (citation omitted). The Court cannot create contractual terms, even if based on common law principles, as a means to artificially manufacture breach of contract claims. That includes terms related to the payment

of interest. *See Hanley v. Porter*, 238 Mich. 617, 622 (1927) (noting parties "could and should have made it plain if there was any such intent or understanding" between them to establish an interest provision).  Plaintiffs also presented no cases where Michigan courts stated that the common law interest follows principal rule gap fills a contract otherwise silent as to interest payments.  Instead, Plaintiffs pointed to two cases in support of its argument, neither of which involved a contractual relationship.

The first, *Grand Rapids Public Schools v. Grand Rapids*, 146 Mich. App. 652 (1982), decided whether interest earned on school tax collections belonged to the school or the city.  Prior to the lawsuit in *Grand Rapids*, the city would collect taxes for the school and remit them daily. *Id.* at 653.  Once remitted, the school would invest the funds immediately. *Id.*  The city later changed its policy to make daily transfers of tax collections by check. *Id.*  The policy shift resulted in "a delay of at least one day before the school district received the funds" and allowed the city to earn over $40,000 on short-term investments over the course of a year. *Id.*  The following year, the city opted to remit checks once a week, generating over $70,000 in interest that year. *Id.*  The school sued and argued that any interest generated by taxes levied and collected on behalf of the school belonged to the school and not the city. *Id.* at 655.

In its ruling, the Court noted that the legislature was silent on whether the city or the school was entitled to the interest. *Id.* at 656.  The court relied on common-

law principles to resolve the issue and found that absent "a clear statutory provision to the contrary, the general principle is that interest on public funds designated for a specific purpose follows those funds." *Id.* Here, it is not a matter of an ordinance being silent but a contract. Whereas courts will follow the common law if there is no statute addressing an issue, the four corners of the contract control the outcome.

The second case Plaintiffs relied on, *Star-Batt, Inc. v. Rochester Hills*, 251 Mich. App. 502 (2002), also did not involve contractual interpretation. In *Star-Batt*, the city required contractors to post a cash bond in case the contractor caused damage to city property or failed to pay for certain city services. *Id.* at 503. The applicable ordinance said nothing about whether interest earned on the cash bond fund belonged to the city or the contractor. *Id.* at 508. Applying the common law, the court found that because the principal fund belonged to the contractor, so did the interest earned on the fund. *Id.* at 509–11. Again, the issue here is one of contract interpretation, so *Star-Batt* is not controlling.

All agree the contract is silent as to interest payments. So here, the type of deposit (general vs. special) is a distinction without a difference. And as there is no applicable contract term, the breach of contract claim fails as a matter of law.

20

### D.   Plaintiffs Non-Contract Claims Cannot Survive.

Plaintiffs brought claims for both common law and statutory conversion and breach of fiduciary duty based on Comerica's retention of the Earnings. (ECF No. 15, PageID.341–44).  Comerica asked the Court to dismiss the clams. (ECF No. 24, PageID.532–35).  First, Comerica reasoned that the existence of a contract between the parties forecloses the tort claims. (*Id.* at PageID.531–32).  Second, even if Plaintiffs could bring the claims, Plaintiffs' allegations did not overcome the presumption that the Funds are general deposits; the rules governing general deposits make the claims untenable. (*Id.* at PageID.532–35).

In response, Plaintiffs asserted that the Court must accept the allegations in the amended complaint as true, specifically that the Funds are special deposits subject to different treatment under the law. (ECF No. 26, PageID.582–87).  Accordingly, Comerica owed Plaintiffs duties under the common law separate from any contractual obligation such that the conversion and breach claims survive as a matter of law. (*Id.* at PageID.583–84, 587).  And even if the Court does not accept the allegations as true, Plaintiffs claimed to have included sufficient facts in the amended complaint to support its characterization of the Funds in the Direct Express accounts. (*Id.*).

Regardless of whether the Terms of Use foreclose the non-contract claims, the Court finds Plaintiffs failed to plead sufficient facts for the claims to survive as a

matter of law. In order for the claims to survive, Plaintiffs would need to establish that the Funds are special deposits. Since Plaintiffs did not do so, the Court will presume the Funds are general deposits and that the rules governing general deposits apply. Because Plaintiffs cannot bring conversion and breach of fiduciary duty claims based on general deposits, the claims are subject to dismissal.

To begin, the Court will not accept as true Plaintiffs' characterization of the Funds as special deposits. (ECF No. 15, PageID.328–29). That allegation is a legal conclusion based on the evidence, not a fact. *See Twombly*, 550 U.S. at 555 ("courts are not bound to accept as true a legal conclusion couched as a factual allegation") (citation omitted). As such, the Court must evaluate whether the facts in the amended complaint show that the Funds are special deposits well enough to state a claim. Here, the alleged "special deposit" characteristics of the cardholder accounts are either unconvincing or undermined by the Terms of Use and the FAA.[3]

Courts presume that deposits are general. *Keyes v. Paducah & I. R. Co.*, 61 F.2d 611, 613 (6th Cir. 1932); *see also Merrill Lynch Mortg. Cap., Inc. v. FDIC*, 293 F. Supp. 2d 98, 105 (D.D.C. 2003) (applying New York law rule that "deposits are

---

[3] When a document attached to the complaint "contradicts allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) (quoting *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017)).

presumed to be general")[4].  That means that the relationship between the bank and the customer is one of a debtor-creditor, and the deposit "become[s] part of [the bank's] general funds." *Keyes*, 61 F.2d at 613.  A special deposit, however, "consists in the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title." *Id.*  The deposit must be "made for a special purpose and with the understanding it is to be set aside solely for that purpose and not mingled with the other funds of the bank." *Owosso Masonic Temple Ass'n v. State Sav. Bank*, 273 Mich. 682, 691 (1935); *see also Bridge v. First Nat. Bank*, 5 F. Supp. 442, 444 (E.D. Mich. 1933) ("A special deposit is one deposit made under some express or clearly implied agreement that it is made for some particular purpose . . . ").  The depositor carries the burden of proof to overcome the presumption that the deposit is general "by proving that the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose." *Keyes*, 61 F.2d at 613; *see also Merrill Lynch*, 293 F. Supp. 2d at 105 ("A depositor can overcome this presumption by proving the existence of an agreement, express or implied, that an account was a special deposit.").  Although Plaintiffs did not deposit the Funds, they hold the customer relationship with Comerica and therefore carry the burden of proof.

---

[4] Both Comerica and the Plaintiffs cited *Merrill Lynch* in their briefs as persuasive. (ECF No. 24, PageID.524, 526, 528; ECF No. 26, PageID.575–76, 578–79).

Here, Plaintiffs alleged the following facts to show the account is a specific deposit: (1) the Terms of Use state that cardholders are the "owner of the funds in the Card Account; (2) Comerica has unique routing and Bank Identification (BIN) numbers for the Program; (3) the deposits into the accounts are "not mingled with the money of other depositors in a general fund chargeable with the payment of general deposits"; (4) the Terms of Use do not allow Comerica to "set off" a cardholder's Direct Express Card for the obligations of a cardholder unless the obligations are directly related to the cardholder's Direct Express Card; and (5) the Terms of Use prohibit benefit recipients from depositing their own funds into the account. (ECF No. 15, PageID.328–31). The Court finds that the allegations do not overcome the presumption that the Funds are general deposits.

First and foremost, Plaintiffs offered no facts to suggest that either the Government or Comerica intended the Funds to be special deposits. *See Borgess Hosp. v. Union Indus. Tr. & Sav. Bank of Flint*, 265 Mich. 156, 161 (1933) (designating an account as a special deposit requires "an intention on the part of both parties that it must be held and used exclusively for such purposes"). Since the Government is the depositor and Comerica the bank, the Court finds that their intent controls. Plaintiffs presented no evidence of either party's intent to designate the Funds as special deposits, not in the FAA or otherwise. Moreover, the Terms of Use

reflect no intention to convert the funds from general to special deposits upon receipt in the accounts.

Plaintiffs next argued that because they are the "owner" of the Funds under the Terms of Use, the Funds are special deposits. (ECF No. 15, PageID.327, 329). But that, without more explicit terms or evidence of intent, is not helpful to their cause; presumably, the person a bank account belongs to owns or at the very least controls the account.

The FAA and Terms of Use also contain provisions that suggest the Funds are general deposits.  For example, the FAA includes a set-off right, which is typical of the "relation existing between banks and their depositors" as that of "debtor and creditor." *United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 394–95 (1925). Plaintiffs claimed that because the set-off right is limited, the Court cannot presume the Funds are general deposits. (ECF No. 26, PageID.580).  But that argument does not overcome the fact that a set-off right exists in the first place.  Likewise, the Funds "are FDIC insured to the maximum amount permitted by law" under the Terms of Use. (ECF No. 15, PageID.352).  If Plaintiffs or the Government expected Comerica to hold the Funds as a custodian and return exactly what was deposited, then FDIC insurance is unnecessary.

In addition, unique BIN or routing numbers are factually insufficient to support Plaintiffs' legal conclusion.  Opening an account under a special name "in and of itself" does not stamp it as a special deposit. *See Borgess*, 265 Mich. at 161. Unless there is a mutual understanding that the bank is to act not as a debtor but as a custodian of funds, to read a unique numerical sequence as containing some hidden meaning undisclosed by the parties is too inferential an exercise.  Next, the applicable regulations state that the accounts will receive "the same consumer protections provided to other account holders at the financial institution." 31 C.F.R. § 208.5.  So it is unclear why typical banking practices – and the assumption that the deposit is general – would not apply here.

Some of Plaintiffs statements about the Funds are completely unsupported. Plaintiffs alleged that the deposits are "not mingled with the money of other depositors in a general fund chargeable with the payment of general deposits." (ECF No. 15, PageID.330).  But the FAA, Terms of Use, and applicable regulations say nothing about this. *Contra Merrill Lynch*, 293 F. Supp. 2d at 106 (noting agreement included language that bank was to "'segregate and hold all funds collected and to keep the mortgage funds 'separate and apart from any of its own funds and general assets'").  Plaintiffs do not even plead upon information and belief that this is the case.  So with nothing to back up its claim in the governing agreements, the Court is skeptical.

Overall, the Court finds that Plaintiffs' failure to show a mutual understanding between any of the parties that Funds were special deposits is fatal to their claims. The Court will presume the Funds are general deposits, and therefore the Court finds that the conversion and breach of fiduciary duty claims cannot survive. *See Check Reporting Servs., Inc. v. Mich. Nat. Bank-Lansing*, 191 Mich. App. 614, 626 (1991) ("An action for the conversion of bank account funds . . . can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it."); *Wright v. PNC Fin. Servs. Grp., Inc.*, No. 13-15291, 2015 WL 4619857, at *4 (E.D. Mich. July 31, 2015) ("Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations because to do so would be too radical a departure from well-established, traditional banking laws.") (citation omitted).  For these reasons, the Court will grant Comerica's motion to dismiss. (ECF No. 24).

### E.     The Court Will Not Grant Sanctions Against the Government.

The Court will also deny Plaintiffs' request for sanctions against the Government. (ECF No. 23, PageID.471).  The Government sought concurrence before filings its motion. (ECF No. 21, PageID.432).  Although Plaintiffs objected to the Government's form in doing so, the Court does not find that sanctions are reasonable.  In addition, Plaintiffs did not move for sanctions in a separate motion but instead did so in their response brief. (ECF No. 23, PageID.471).  Because the

request does not comply with the requirements of Federal Rule of Civil Procedure 11(c)(2) or E.D. Mich. Local Rule 11.1, the Court finds denial of sanctions further warranted. *See Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 309 (E.D. Mich. 2004) (denying motions for sanctions that were filed "as a subsection of a responsive brief" and "not as separate motions").

* * *

For the reasons given, the Court **ORDERS** that the Government's motion to dismiss (ECF No. 21) is **GRANTED**.

The Court **FURTHER ORDERS** that Comerica's motion to dismiss (ECF No. 24) is **GRANTED**.

Dated: March 5, 2026                     s/Robert J. White
                                         Robert J. White
                                         United States District Judge

28